# EXHIBIT A

1

David J. Millstein (California SBN 87878)
Owais Bari (SBN 321954)

2

MILLSTEIN & ASSOCIATES
100 The Embarcadero, Penthouse

3

San Francisco, CA 94105
Telephone: (415) 348-0348

4

Facsimile: (415) 348-0336

5

dmillstein@millstein-law.com
obari@millstein-law.com

6

**Attorneys for Plaintiff:**

7

RUSTY AREIAS, an Individual and

8

MERCURY PUBLIC AFFAIRS, LLC,
a Delaware corporation transacting

9

business in California, assignees of

10

California Strategies, LLC





F I L E D
San Francisco County Superior Court

NOV 1 0 2020

CLERK OF THE COURT
BY: _____
Deputy Clerk

11

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

12

### COUNTY OF SAN FRANCISCO

13

14

RUSTY AREIAS, an Individual and
MERCURY PUBLIC AFFAIRS, LLC, a

15

Delaware corporation transacting business in

16

California, assignees of California Strategies,
LLC

17

Plaintiffs,

18

19

vs.

20

APPLIED UNDERWRITERS, INC, an Omaha

21

corporation transacting business in California,
STEVEN MENZIES, an Individual, ALAN

22

QUASHA, an Individual, and DOES 1-20

23

inclusive,

24

Defendants.

25

26

27

28

Case No. **CGC - 20 - 587947**

**COMPLAINT FOR:**

1)  **BREACH OF WRITTEN CONTRACT**
2)  **BREACH OF ORAL CONTRACT**
3)  **FRAUD**
4)  **UNJUST ENRICHMENT**
5)  **QUANTUM MERUIT**
6)  **BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

**BY FAX**

COMPLAINT - 1

Plaintiffs Rusty Areias, an Individual, and Mercury Public Affairs, LLC, allege as follows:

## I.   INTRODUCTION

1.     Applied Underwriters, Inc. ("AU") is a national provider of workers' compensation insurance, other commercial insurance, and risk transfer and financing plans. The company is headquartered in Omaha, Nebraska. AU's subsidiaries include California Insurance Co., Continental Indemnity Co., Pennsylvania Insurance Co., Illinois Insurance Co., and Texas Insurance Co., that are collectively known as North American Casualty Co.

2.     AU has a history of breaching its contractual obligations and violating insurance regulations across the State of California.  Presently AU is facing a litany of claims across the State of California for its illegal insurance practices and flouting insurance regulations.

3.     In 2019,  Defendant AU entered into a consulting agreement with the plaintiffs for their services to facilitate the domestication of California Insurance Company ("CIC"), a subsidiary of Applied Underwriters, Inc. Defendant Steven M. Menzies ("Menzies"), the then President and CEO of AU along with his business partner Defendant Alan Quasha fraudulently induced the Plaintiffs to enter into a contract, denied them due compensation for their services and committed fraud. Plaintiffs seek damages for AU's, Menzies', and Quasha's fraudulent actions, breach of contract, and payment denial.

## II.   PARTIES

1.     At all times material hereto, Mercury Public Affairs LLC ("Plaintiff Mercury") was or is a limited liability company incorporated under the laws of Delaware, with its principal place of business  located at 770 L Street Suite 1440, Sacramento, CA 95814, and is the assignee for value from California Strategies, LLC of all rights and benefits under the Consulting Agreement between Applied Underwriters, Inc., and California Strategies LLC.

2.     At all times material hereto, Rusty Areias, ("Plaintiff Areias") an individual, is a resident of the State of California, is the assignee for value from California Strategies, LLC of all rights and benefits under the Consulting Agreement between Applied Underwriters, Inc., and California Strategies, LLC.

COMPLAINT - 2

3.    At all times herein, Plaintiff Mercury provided services in connection with the matter, was a sub-contractor of California Strategies who agreed to equally share all fees in the matter, and was assigned any and all interest of California Strategies jointly and severally with Rusty Areias.

4.    At all times material hereto, Defendant Applied Underwriter, Inc. ("AU") was and is an Omaha corporation whose principal place of business is 950 Tower Ln 14th Floor, Foster City, California, and had been authorized by California Department of Insurance to transact insurance in the State of California.

5.    At all times material hereto, Defendant Alan Quasha ("Quasha") is an individual and resides in the State of New York. Plaintiff is informed and believes and alleges thereupon that Alan Quasha acquired non-insurance service company subsidiaries of Applied Underwriters, Inc.

6.    At all times material hereto, Defendant Steven M. Menzies ("Menzies") is an individual and resides in San Francisco, California. Defendant Steven Menzies is the sole owner and president of Applied Underwriters, Inc.

7.    Does 1-20, inclusive, are sued herein under fictitious names. Their true names and capacities are unknown to the Plaintiffs. When the true names and capacities are ascertained, the Plaintiff will amend by inserting their true names and capacities herein.  Plaintiffs are informed and believe and thereon allege that each of the fictitiously named Defendants participated in the acts complained of herein and is the agent of all other defendants in undertaking actionable conduct alleged herein.  Some of these DOES colluded with Defendants and acted as their agents in doing the acts alleged herein.

8.    Plaintiffs are informed, believe, and based thereon alleges, that at all times relevant hereto, each defendant herein was, and is, an agent and employee of each and every other defendant and, in performing the acts herein alleged, was acting within the course and scope of said agency and employment and that each defendant sued herein is jointly and severally liable to plaintiffs for the damages alleged herein.

9.     The allegations of this Complaint stated on information and belief are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery

## II.     JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this controversy as a court of general jurisdiction within the City and County of San Francisco.  Venue in this Court is proper pursuant to Code of Civil Procedure § 395.5, as Defendant Steve Menzies is a resident of the County of San Francisco, California. Additionally, defendants entered into a Consulting Agreement with the Plaintiffs, which was performed and breached in the State of California. Parties agreed in writing that the contract would be governed by the laws of the State of California.

## III.     GENERAL ALLEGATIONS

11.     On or about on January 31, 2019, Defendant Menzies entered into a Stock Purchase Agreement to acquire the sole ownership of AU Holding Company, Inc., and all of its subsidiaries from majority stakeholder Berkshire Hathaway in 2019 ("Berkshire Deal").

12.     Before the acquisition, Defendant Menzies was serving as President and CEO of Applied Underwriters, Inc., California Insurance Company ("CIC"), Captive Risk Assurance Company, Inc. ("CRA"), Continental Indemnity Company, Illinois Insurance Company, and Pennsylvania Insurance Company. These companies ("Domestic Insurers") are wholly owned subsidiaries of AU Holding Company, Inc., a Delaware corporation ("AU Holding"). Berkshire Hathaway owned eighty-one percent (81%) of the issued and outstanding shares of AU Holding, Menzies owned eleven and one-half half percent (11.5 %) of AU Holding, and Sidney Ferenc ("Ferenc") owned seven and one-half percent (7.5%) of AU Holding.

13.     AU Holding owned all the issued and outstanding shares of Applied Underwriters, Inc. (AU), and all of the issued and outstanding shares of North American Casualty Co. ("NAC")

14.     AU owned all the issued and outstanding shares of several non-insurance business service companies.

15.     Through the Berkshire Deal, Menzies would acquire sole ownership of AU Holding, Inc., and all its insurance subsidiaries, including the Domestic Insurers, AU, and all its non-insurance business services subsidiaries. The Berkshire Deal required that Menzies secure approval of Form-A Application pending before California Department of Insurance ("CDI") or redomesticate AU's wholly-owned subsidiary California Insurance Company ("CIC") from California to the State of Illinois or any other state before September 2019. In either event, if Menzies failed to secure regulatory approval for the redomestication of CIC, he would lose the $50 million non-refundable deposit that he made to Berkshire Hathaway as well as the Berkshire Deal.

16.     Plaintiffs allege upon information and belief that Defendant Quasha provided Menzies with $50 million to pay the non-refundable deposit in the Berkshire Deal. Plaintiffs further allege upon information and belief that Quasha was set to acquire AU's non-insurance business services subsidiaries contingent upon Menzies acquiring sole ownership of AU Holding and AU.

17.     On or about February and after that in late June 2019, Plaintiff Mr. Fabian Nunez (Partner at Mercury) met with defendants Menzies, Quasha, and AU's treasurer Jeffrey A. Silver ("Silver") multiple times in person while plaintiff Areias met with them telephonically. The parties discussed at length the terms of engagement for assisting with obtaining approval of California Insurance Company's ("CIC") FORM-A application. In these meetings, plaintiffs inquired about AU and CIC's standing with the CDI and asked the defendants Menzies, Quasha, and Silver to disclose any issues that might pose a challenge to get CIC's FORM-A approved. In response to this inquiry, Menzies, Quasha, and Silver jointly represented:

a.     That AU and CIC were in good standing with the California Department of Insurance.

b.     That AU and CIC had not engaged in any improper conduct that would jeopardize the approval of FORM-A or any redomestication effort with the CDI and they were not aware of the existence of any negative facts. AU represented they were simply suffering from "red tape" that was slowing the application down.

COMPLAINT - 5

18.     Defendant Menzies', Quasha's, and Silver's representations were false. Defendants Menzies and AU failed to disclose that in early 2019 they had made direct or indirect unauthorized campaign contributions in the amount of $53,000 to California Insurance Commissioner Ricardo Lara's election campaign, as reported by news organizations. The contributions were made through individuals related to AU executives one month before AU notified CDI that it was in the process of being sold.

19.     Defendants Menzies, Quasha, and Silver withheld the facts that AU's wholly-owned subsidiaries Applied Underwriters Captive Risk Assurance Company, Inc. ("CRA") and CIC circumvented California's filing requirement and decided to directly sell unfiled insurance plans to unwitting employers in California. Many employers who had been sold these unfiled plans had filed lawsuits against AU, CIC, and CRA in 2017 were filing administrative appeals in 2018.

20.     On or about June 26, 2019, plaintiffs and defendants had agreed upon the material terms of their engagement. Plaintiffs agreed to provide general and strategic consulting services to help get the approval of California Insurance Company's ("CDI") Form-A application or assist in CDI's redomestication to the State of Illinois  or any other state subject to the parties' agreement. Defendants agreed to pay $1 million and costs as fees for plaintiffs' services.

21.     On or about July 2, 2019, plaintiffs started working on the project with mutual assent and understanding of the parties.

22.     On or about on July 10, 2019, plaintiffs in reasonable reliance on statements made by the defendants memorialized their oral agreement into the "Consulting Agreement." A true and correct copy of the Consulting Agreement is attached hereto as **Exhibit 1** and incorporated herein by reference.

23.     Under the Consulting Agreement, the parties could, and did, mutually agree to redomesticate CIC to a state other than Illinois (New Mexico) under the agreement. The Consulting Agreement does not require that the parties agree to a new state for redomestication in writing. Defendant AU was obligated to pay the plaintiffs $1 million consulting fee on the date CDI approved CIC's FORM-A or redomestication to Illinois or a state other than Illinois.

24.     On or about mid-July 2019, news about lawsuits pending in administrative and state courts against AU and CIC for egregious violation of insurance regulations became public. After plaintiffs became aware of the allegations, they confronted Quasha and Menzies with the allegations surrounding AU and CIC, who downplayed the allegations.

25.     The public scrutiny associated with the burgeoning scandal surrounding AU and its subsidiaries greatly diminished the prospects of obtaining CIC's Form-A approval or re-domestication to another state without objection.

26.     On or about August 2019, Quasha and Menzies told plaintiffs they would have to forfeit to Berkshire Hathaway a $50 million deposit unless CIC could domesticate to any state other than Illinois.

27.     By late August, it became apparent that the CDI was not going to approve CIC's FORM-A application, and to avoid forfeiture of the $50 million deposit, CIC had to redomesticate to another state.

28.     On or about August 2019, AU, Menzies, and Quasha decided that under the circumstances, CIC would attempt to re-domesticate to any state that it could. Defendants AU, Menzies, and Quasha wanted the plaintiffs to change their focus from CIC's FORM-A Application as agreed to in the Consulting Agreement to getting CDI to not object to CIC's re-domestication to another state. Defendant AU agreed to modify the contract in multiple ways. First, it offered to modify the contract to allow the plaintiffs to seek re-domestication to any other state while avoiding objection from CDI, and that payment would be due upon successful redomestication to any state without objection from CDI. Second, defendant Quasha promised to pay plaintiffs an additional fee of $1 million for the changed scope of services, which would be paid on the date CIC redomesticated. Plaintiffs accepted the offer, amending the agreement.

29.     Plaintiffs reasonably relied on the veracity of Quasha's representation. He was set to lose a sizeable fortune and the chance to acquire AU's non-insurance service companies. Quasha was, therefore, willing to incentivize the plaintiffs to expedite and intensify their efforts. Plaintiffs devised a comprehensive strategy to assist in CIC's redomestication to New Mexico

and ensure that CDI would not object to the redomestication in New Mexico. Plaintiffs were not aware Quasha had no intention of paying $2 million to the plaintiffs as required.

30. On or about September 2019, Menzies obtained an extension of the Berkshire Deal's forfeiture provisions, extending the deadline from September 30, 2019, to October 30, 2019. Upon information and belief, plaintiffs allege that Menzies and Quasha paid an additional $10 million to Berkshire Hathaway over the $50 million for the extension.

31. On or about September and October 2019, Quasha desperately wanted to close the Berkshire Deal before the forfeiture deadline. CDI delayed its decision on CIC's FORM-A and would delay any effort on CIC's redomestication to New Mexico. Quasha was on the verge of losing $60 million.

32. On or about October 1, 2019, the parties agreed to extend the Consulting Agreement by one month and agreed that all other terms of their previously agreed upon arrangement inclusive of subsequent oral contracts and modifications remain the same. A true and correct copy of that extension is attached hereto as **Exhibit 2.** The parties signed the extension with the intention to extend the orally modified Consulting Agreement.

33. On October 9, 2019, AU successfully re-domesticated to New Mexico. Due to Plaintiffs' efforts, CDI did not object to this redomestication, and as a result, the AU purchase was able to go through. Quasha avoided a forfeiture of $60 million.

34. On or about October 15, 2019, plaintiffs sent an invoice via email to Quasha for payment of consulting fees for assisting in securing redomestication to the state of New Mexico. Plaintiffs allege upon information and belief that Quasha is a business partner of Menzies, acquired the non-insurance service companies of AU, and was acting as an agent of AU at the time he received the invoice. Quasha, in response to Plaintiffs' email, while disclaiming the $1 million that he fraudulently promised to pay personally, ratified the oral modification of the Consulting Agreement and AU's contractual obligation to pay the initial $1 million.

35. On November 5, 2019, the Superior Court of San Mateo appointed the California Insurance Commissioner as Conservator for California Insurance Company.

36. The Consulting Agreement was signed between California Strategies, LLC, and

AU. On or about November 5, 2020, California Strategies, LLC, assigned the benefits and claims of this contract to Plaintiffs Rusty Areias and Mercury Public Affairs, LLC.

### FIRST CAUSE OF ACTION

#### (Breach of Contract Against AU)

37.     Plaintiffs incorporate by reference each of the General Allegations set forth above in paragraphs 9-35 as though fully set forth herein.

38.     On July 10, 2019, California Strategies, LLC contracted with Defendant AU to provide general and strategic consulting services pursuant to the Consulting Agreement's terms dated July 10, 2019, attached hereto as **Exhibit 1.**

39.     On or about August 2019, the parties by mutual assent orally modified the Consulting Agreement to expand the scope of the agreement to include assistance in obtaining re-domestication to any other state, not just Illinois, and avoid objection by CDI. Through conduct and oral agreement, defendants waived any requirement that modification of the Consulting Agreement be in writing.  The oral modification has been fully executed through the services provided by plaintiffs and the achievement of the ultimate ends of the contract, the re-domestication of CIC to New Mexico without objection from CDI.

40.     The contract inclusive of the oral modification identified in Paragraph 38 above was modified to extend its timeline for performance through October 31, 2019, per the terms of **Exhibit 2**.

41.     The plaintiffs did all, or substantially all, of the significant things that the Consulting Agreement required them to do.

42.     On or about October 15, 2020, defendants through their agent Quasha admitted plaintiffs' performance of the contract and ratified their obligation to pay the first $1 million.

43.     In breach of the Consulting Agreement, defendants failed to pay Plaintiffs the $1 million fee for services rendered pursuant to the Consulting Agreement.

44.     Defendants have no justification or defense for their breach of the express terms of the Consulting Agreement. As a direct and proximate result of Defendants' breaches, plaintiffs have suffered extreme financial loss.

45.     Wherefore, plaintiffs request the relief set forth below.

## SECOND CAUSE OF ACTION

### (Breach of Oral Contract Against ALL DEFENDANTS)

46.     Plaintiffs incorporate by reference each of the allegations set forth above in paragraphs 9-44 as though fully set forth herein.

47.     In alternative to and/or in addition to modifying the July 10, 2019, Consulting Agreement, on or about August 2019, plaintiffs and Defendants Menzies, AU, and Quasha entered into an oral contract to provide strategic consulting services in getting CDI to not object to CIC's redomestication to any other state for a $1 million fee. The fee would be paid on the date CIC redomesticated to New Mexico.

48.     The plaintiffs did all, or substantially all, of the significant things that the oral contract required them to do.

49.     Defendants in breach of the oral agreement failed to pay plaintiffs' $1 million fee for services rendered pursuant to the oral agreement despite CIC's redomestication to New Mexico on October 9, 2019.

50.     Defendants have no justification or defense for this breach of the oral contract. As a direct and proximate result of defendants' breach, plaintiffs have suffered extreme financial loss.

51.     Wherefore, plaintiffs request the relief set forth below.

## THIRD CAUSE OF ACTION

### (FRAUD AGAINST ALL DEFENDANTS)

52.     Plaintiffs incorporate by reference each of the allegations set forth above in paragraphs 9-50 as though fully set forth herein.

53.     On or about June and July 2019, Defendants Menzies, Quasha, and Silver jointly made the following oral representations to the plaintiffs:

   a.     That AU and CIC were in good standing with the California Department of Insurance.

b.    That AU and CIC had not engaged in any improper conduct that would jeopardize the approval of FORM-A or any redomestication effort with the CDI.

54.    These representations were false because AU had directly or indirectly made unauthorized campaign contributions of $53,000 to the California Insurance Commissioner Ricardo Lara election campaign. The contributions were made through individuals related to AU executives when a litany of lawsuits against AU was pending adjudication before CDI.

55.    The representation made by Defendants Menzies, Quasha, and Silver that AU and CIC had not engaged in any improper conduct that would later jeopardize the approval of CIC's FORM-A application and redomestication were untrue because AU's wholly-owned subsidiaries Applied Underwriters Captive Risk Assurance Company, Inc. ("CRA") and CIC circumvented California's rules by directly selling unfiled insurance plans to unwitting employers in California. Many employers who had been sold these unfiled plans had filed lawsuits against AU, CIC, and CRA in 2017 were filing administrative appeals in 2018.

56.    Defendants made these false representations, with the intention to induce plaintiffs to act in reliance on these representations in the manner hereafter alleged, or with the expectation that plaintiffs would so act. Additionally, once confronted regarding these false statements, Defendants Menzies, Quasha, and Silver continued to downplay the extent of their misrepresentations and their importance.

57.    In reliance on the representations above, plaintiffs were induced to enter into a "Consulting Agreement" to provide consulting services to Defendant AU. Plaintiffs eventually came to know of the falsity of the defendants' representations after entering into the Consulting Agreement, but initially relied on the false characterizations of AU's conduct and continued to perform under the Consulting Agreement based on those assurances.

58.    Had plaintiffs known the actual facts, they would not have entered into the Consulting Agreement. Plaintiffs' reliance on Defendants' representations was justified because the representations were made by Menzies, who had served as the President and CEO of AU for 15 years and was authorized to enter into a contract on behalf of AU. Further, plaintiffs

reasonably believed that Quasha was well informed of AU's standing and business operations since he had invested a significant fortune in the Berkshire Deal.

59.     As a proximate result of defendants' fraudulent conduct as alleged in this Complaint, Plaintiffs were substantially harmed. Plaintiffs spent their time and valuable resources in providing consulting services from July 1, 2019, to October 9, 2019, and did not receive any payment for services.

60.     In making the above-identified misrepresentations, defendants acted with oppression, fraud, and malice.

61.     Plaintiffs have been damaged in an amount to be proven at trial due to defendants' fraudulent and deceitful actions in inducing the plaintiffs to enter into an onerous contract and withholding payment.

62.     Wherefore, plaintiffs request the relief set forth below.

### FOURTH CAUSE OF ACTION

### (FRAUD AGAINST DEFENDANT ALAN QUASHA)

63.     Plaintiffs incorporate by reference each of the allegations set forth above in paragraphs 9-61 as though fully set forth herein.

64.     On or about in October 2019, Alan Quasha orally represented to Mr. Areias and Mr. Nunez (Partner at Mercury) during a teleconference that he would pay double the $1 million consulting fees if they could assist him in avoiding forfeiture of a $60 million non-refundable fee payable to Berkshire Hathaway. Quasha orally represented that payment of $2 million would be contingent upon successful redomestication of CIC to any other state without objection from CDI and avoiding forfeiture of $60 million in the Berkshire Hathaway deal.

65.     Defendant's representations were false. Defendant had no intention of paying $2 million to the plaintiffs despite avoiding forfeiture. On October 15, 2019, plaintiffs sent an invoice to Quasha for $2 million. Defendant Alan Quasha rejected the $2 million invoice for AU's obligation and offered to pay $1 million instead.

66.     When Defendant made these representations, he knew them to be false and made these representations intending to induce plaintiffs to act in reliance on these representations in

1  the manner hereafter alleged, or with the expectation that plaintiffs would so act.

2        67.    Plaintiffs were ignorant of the falsity of defendant's representations and believed

3  them to be true. In reliance on these representations, plaintiffs were induced to provide consulting

4  services to Defendant Quasha.  The true facts regarding AU's standing with regulators created a

5  much higher risk that the "Consulting Agreement" could not be completed and would require

6  much more extensive services than originally contemplated.  Plaintiffs would not have agreed to

7  provide more extensive consulting services than originally contemplated in exchange for a much

8  less certain payment had the amount of compensation not been increased as represented by

9  Defendant Quasha.

10        68.    Plaintiffs reasonably relied on defendant's representation. Defendant was set to

11  lose the chance to acquire AU's non-insurance service companies and his potential investment of

12  $60 million. Quasha was willing to incentivize the plaintiffs to expedite and intensify their efforts.

13        69.    In taking the above action, Defendant Quasha acted with oppression, fraud, and

14  malice.

15        70.    Plaintiffs would not have continued to work with the defendant had they known

16  the defendant had no intention of paying the $2 million fee as promised.

17        71.    Plaintiffs have been damaged in an amount to be proven at trial as a result of

18  defendant's fraudulent and deceitful action in inducing the plaintiffs to enter into an oral contract

19  and withholding payment.

20        72. Wherefore, plaintiffs request the relief set forth below.

21            **FIFTH CAUSE OF ACTION**

22        **(UNJUST ENRICHMENT AGAINST ALL DEFENDANTS)**

23        73.    Plaintiffs incorporate by reference each of the allegations set forth above in

24  paragraphs 9-71 as though fully set forth herein.

25        74.    Plaintiffs conferred financial benefits upon defendants. As a direct and proximate

26  result of plaintiffs' assistance and services, Defendant Menzies completed the $920 million

27  acquisition of AU, avoided a forfeiture of $60 million,  AU achieved redomestication of CIC to

28

New Mexico, thus continuing transacting insurance business, and Quasha acquired non-insurance service subsidiaries of AU.

75.     As a direct and proximate result of fraud and other wrongful acts, defendants unjustly withheld $2 million from the plaintiffs, which is due and payable since October 9, 2019, when CIC redomesticated to New Mexico.

76.     It would be inequitable and unjust for the defendants to be permitted to retain any of the unlawful proceeds resulting from their fraudulent, opportunistic, illegal, and inequitable conduct.

77.     As alleged in this Complaint, defendants have been unjustly enriched because of their wrongful conduct and fraud at the plaintiffs' expense. Defendants unjustly retained $2 million owed to the plaintiffs in fees for services rendered and as a direct and consequential result of the plaintiffs' services acquired a benefit of $60 million by avoiding forfeiture on the Berkshire Deal.     Accordingly, plaintiffs are entitled to equitable relief, including restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by the defendants as a result of fraudulent, inequitable, and wrongful acts.

78. Wherefore, plaintiffs request the relief set forth below.

## SIXTH CAUSE OF ACTION

### (COMMON COUNT AGAINST ALL DEFENDANTS)

79.     Plaintiffs incorporate by reference each of the allegations set forth above in paragraphs 9-77 as though fully set forth herein.

80.     In the event that the Court finds that there was no valid contract, plaintiffs allege a claim for common counts; that defendants AU, Menzies, and Quasha owe plaintiffs money for performing consulting services from July 2019 to October 2019, including but not limited to reviewing materials, coordinating meetings and devising a successful strategy for re-domestication of the CIC from California to New Mexico which saved the defendants $60 million in potential forfeitures and allowed them to continue transacting insurance business unhindered from CID.

81.     Plaintiffs performed these services in good faith and expected compensation for services rendered.

82.     Plaintiffs performed the services as requested by the defendants without fault and with diligence.

83.     Defendants accepted the plaintiffs' services and have failed to make payments to the plaintiffs for the consulting services rendered from July to October 2019.

84.     The fair and reasonable value of the defendants' services for which the defendants have not paid plaintiffs is at least $2 million.

85.     Wherefore, plaintiffs request the relief set forth below.

## SEVENTH CAUSE OF ACTION

### (BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AGAINST ALL DEFENDANTS)

86.     Plaintiffs incorporate by reference each of the General Allegations set forth above in paragraphs 9-84 as though fully set forth herein.

87.     On July 10, 2019, California Strategies, LLC contracted with Defendant AU to provide general and strategic consulting services pursuant to the terms of the Consulting Agreement dated July 10, 2019, attached hereto as **Exhibit 1.**

88.     The Consulting Agreement gives rise to the implied promise of good faith and fair dealing.  Good faith means honesty of purpose without any intention to mislead or to take unfair advantage of another.

89.     On or about August 2019, the parties by mutual assent orally modified the Consulting Agreement to expand the agreement's scope to include assistance in obtaining re-domestication to any other state, not just Illinois, and avoid objection by CDI. Through the conduct and oral agreement, defendants waived any requirement to modify the Consulting Agreement in writing.  The oral modification has been fully executed through the services provided by plaintiffs and the achievement of the ultimate ends of the contract, the re-domestication of CIC to New Mexico without objection from CDI.

90.     The plaintiffs did all, or substantially all, of the significant things that the Consulting Agreement required them to do.

91.     Defendants, in breach of the Consulting Agreement, failed to pay Plaintiff a $1 million fee for services rendered pursuant to the Consulting Agreement.

92.     Defendants have no justification or defense for their breach of the express terms of the Consulting Agreement. As a direct and proximate result of defendants' breaches, plaintiffs have suffered extreme financial loss.

93.     On or about October 15, 2019, plaintiffs sent an invoice to Quasha for payment of the success fee for assisting AU in securing redomestication to the state of New Mexico. Quasha objected only to the additional $1 million that he promised but did not dispute AU's obligation to pay the $1 million.  Defendants have ratified the initial $1 million obligation but have yet to make the payment. Defendants in bad faith withheld material facts affecting plaintiffs' ability to perform the contract and made false promises to make payment for services despite having no intention of doing so. Defendants withheld material facts about claims filed against AU and its attempt to bribe the California Insurance Commissioner, making it onerous and extremely difficult for the plaintiffs to perform the contract. In doing so, the defendants did not act fairly and in good faith.

94.     Defendants have no justification or defense for their breach of the express terms of the Consulting Agreement.

95.     As a direct and proximate result of defendants' conduct, plaintiffs have suffered extreme financial loss.

96.     Wherefore, plaintiffs request the relief set forth below.

## V.     PRAYER

WHEREFORE, plaintiffs pray for:

1.      Actual, statutory damages, punitive or treble damages, and such other relief available under law.

2.      The reasonable value of plaintiffs' services that the defendants received.

3.    Equitable relief in the form of restitutionary and/or non-restitutionary disgorgement.

4.    Pre-judgment and post-judgment interest.

5.    The costs of bringing this suit, including reasonable attorneys' fees; and

6.    All other relief allowed by law in which the Court deems proper.

Dated: November 9, 2020                 MILLSTEIN & ASSOCIATES

_____
David J. Millstein, Esq.
Owais M. Bari, Esq.

Attorneys for Plaintiffs

# EXHIBIT 1



CALIFORNIA STRATEGIES, LLC

## CALIFORNIA STRATEGIES AGREEMENT

July 8, 2019

This Agreement ("Consulting Services Agreement," or "Agreement") is hereby entered into and will serve to confirm the engagement of California Strategies, LLC ("Consultant") as a consultant to Applied Underwriters, Inc. ("Client") to provide general and strategic consulting services to the Client, and other such matters as the Client may refer to the Consultant from time to time.[1]

### Scope of Work:
The following activities will be carried out for the Client:

1. Conduct strategy sessions with Client and project team.
2. Review background materials in detail.
3. Develop comprehensive strategy to accelerate California Department of Insurance approval of the sale or redomestication of California Insurance Company.
4. Participate in regular coordination calls and meetings.

### Compensation:

The Client agrees to provide to the Consultant a success fee of $1,000,000 for assisting with obtaining approval of California Insurance Company's ("CIC") Form A application with the California Department of Insurance at IDB # 19-798; APP-2019-00689 or approval of CIC's redomestication from California to the State of Illinois, either of which must occur on or before September 30, 2019 unless Client and Consultant mutually agree in writing to a later date or to redomestication to a state other than Illinois.

Payment in full is due no later than five days after the approval is secured.
The Consultant will submit an invoice to the Client. The invoice should be addressed to:

Jeffrey A. Silver
10805 Old Mill Road
Omaha, Nebraska 68154
Email: jeffreysilver@silver-law.net

### Other Expenses:
The Consultant shall be reimbursed by the Client for reasonable expenses incurred in the normal course of business in support of Consultant's efforts on behalf of Client. "Expenses" may also include costs incurred to retain subcontracted consulting or professional services, should such retention be necessary. Prior approval from Client

---

[1] The scope of consulting services contemplated under this agreement does not include "lobbying" as that term is defined under the Political Reform Act (Gov. Code §§ 81000, et. seq.) or local law.

shall be obtained for items costing more than $500. Any expenses incurred on behalf of Client shall be documented and billed as they occur.

**Duration:**
The services to be rendered by the Consultant under this Agreement, for which a fee shall be paid, will commence July 1, 2019 and conclude September 30, 2019, with the opportunity to continue the relationship if mutually agreeable.

**Mutual Indemnification:**
Notwithstanding any provision of this Agreement to the contrary, neither party shall be liable to the other for indirect, incidental or consequential damages. In the event any damage, liability, loss, expense or cost, including attorneys' fees, is the result of a gross negligent act, error, or omission of a party to this Agreement or any person employed by it, and arises out of the performance of this Agreement, the negligent party shall indemnify, defend and hold the other party harmless.

**Confidentiality:**
The Consultant agrees to protect confidential information against unauthorized disclosure. The Consultant will protect such information using a reasonable degree of care as is used to protect its own confidential information of a like nature. The Consultant agrees to protect confidential information disclosed under this Agreement in both a) a tangible form, clearly labeled confidential at time of disclosure, and b) in non-tangible form, pertaining to matters disclosed in writing or orally which protect or enhance the competitive position of the Client. This Agreement covers confidential information the Consultant has obtained to date and will obtain in the future. The Consultant's obligations regarding confidential information received under this Agreement shall survive for two years following any termination hereof.

**Code of Ethics:**
In respect to the performance of its Scope of Services, the Consultant specifically represents, warrants and agrees that, in respect of its involvement in the Client, no payment or offer of payment has been made or shall be approved or made by the Consultant with the intention or understanding that any part of such payment is to be used to influence or attempt to influence, corruptly or unlawfully, any decision or judgment of any official of any government or of any subdivision, agency, or instrument thereof or any political party in connection with the Client. The obligations in this paragraph shall survive the termination of this Agreement.

**Potential Conflicts of Interest:**
Consultant has used its best effort to evaluate potential conflicts related to this Agreement and its existing client base. While Consultant has determined that no conflicts currently exist, it should be noted that because of changing business objectives future conflicts could occur. Therefore, it is Consultants policy to fully disclose any potential conflicts to all parties as soon as they are known and to resolve them by giving preference to the Client with seniority.

**Independent Contractor Status:**

By execution of this agreement, the Consultant acknowledges that it is an independent contractor and neither it nor its employees are employees of the Client for any purpose whatsoever. The Consultant has no right or authority to assume or create any obligation or responsibility, express or implied, on behalf of the Client, except as expressly authorized in writing by the Client.

**Preclusion of "Lobbying" Services:**

No part of this Agreement, the services contemplated herein, or the execution of said services shall include "lobbying" as that term is defined under the Political Reform Act (Gov. Code §§ 81000 et. seq.) or local law. Consequently, the Client hereby agrees that no payments to Consultant will be classified as payments made to lobbyists or lobbying firms on any lobby disclosure reports filed by the Client, if any. Should at any time questions arise regarding lobbying activities, the Client and Consultant agree to discuss immediately and take the appropriate action. If the scope of required services changes in the future to include lobbying activities, the Consultant shall assist the Client in identifying and retaining a lobbyist and/or lobbying firm. In no event shall Consultant be responsible for or undertake the filing of any campaign contribution disclosure reports on Client's behalf.

**Governing Law:**

This Agreement will be governed by, and construed and enforced in accordance with, the laws of the State of California.

**Amendment:**

This Agreement may be amended only by a written and signed agreement of both the Consultant and the Client.

**ACCEPTED & AGREED:**

Applied Underwriters, Inc.

By: _____
   Jeffrey A. Silver, Secretary

Date: _____7 | 10 | 19_____

California Strategies, LLC

By: _____
   James E. Burton, Managing Partner

Date: ____7. 9. 2019____

# EXHIBIT 2



# CALIFORNIA STRATEGIES, LLC

October 1, 2019

## AMENDMENT TO CONTRACT

The letter of engagement between California Strategies, LLC and Applied Underwriters, Inc. dated July 8, 2019 shall be amended to provide that, effective October 1, 2019, the agreement shall be extended for a one-month period. All other terms shall remain the same.

ACCEPTED & AGREED:

Applied Underwriters, Inc.                     California Strategies, LLC

By: _____          By: _____
Jeffrey A. Silver, Secretary                      James E. Burton, Managing Partner

Date: ____10/3/19____                          Date: ____10-2-2019____

U.S. BANK PLAZA
980 NINTH STREET, SUITE 2000 • SACRAMENTO, CA 95814
TELEPHONE (916) 266-4575 • FACSIMILE (916) 266-4580

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
David J. Millstein (California SBN 87878) Owais M. Bari (SBN 321954)
MILLSTEIN & ASSOCIATES
100 The Embarcadero, Penthouse
San Francisco, CA 94105
TELEPHONE NO.: 415-348-0348        FAX NO.: 415-348-0336
ATTORNEY FOR *(Name):* Plaintiffs Rusty Areias and Mercury Public Affairs, LLC

**FILED**
San Francisco County Superior Court

NOV 1 0 2020

CLERK OF THE COURT
BY: _____ Deputy Clerk

CASE NUMBER:

CGC-20-587947

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  San Francisco
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS: 400 McAllister Street
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME: Unlimited Civil Jurisdiction

CASE NAME:
Rusty Areias et al. v. Applied Underwriters, Inc.

| CIVIL CASE COVER SHEET | | Complex Case Designation | |
|---|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter   [ ] Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[✓] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is  [✓] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a.[✓] monetary   b.[✓] nonmonetary; declaratory or injunctive relief   c.[✓] punitive
4. Number of causes of action *(specify):*  Six (6)
5. This case [ ] is  [✓] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: November 9, 2020
David J. Millstein, Esq.
[TYPE OR PRINT NAME]                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
*www.courtinfo.ca.gov*

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET** CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property
    Damage/Wrongful Death)
Uninsured Motorist (46) (if the
    case involves an uninsured
    motorist claim subject to
    arbitration, check this item
    instead of Auto)

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
    Wrongful Death
Product Liability (not asbestos or
    toxic/environmental) (24)
Medical Malpractice (45)
    Medical Malpractice–
        Physicians & Surgeons
    Other Professional Health Care
        Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip
        and fall)
    Intentional Bodily Injury/PD/WD
        (e.g., assault, vandalism)
    Intentional Infliction of
        Emotional Distress
    Negligent Infliction of
        Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
    Practice (07)
Civil Rights (e.g., discrimination,
    false arrest) (not civil
    harassment) (08)
Defamation (e.g., slander, libel)
    (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
        (not medical or legal)
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease
        Contract (not unlawful detainer
        or wrongful eviction)
    Contract/Warranty Breach–Seller
        Plaintiff (not fraud or negligence)
    Negligent Breach of Contract/
        Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
        Case
Insurance Coverage (not provisionally
    complex) (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
    Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property (not eminent
        domain, landlord/tenant, or
        foreclosure)

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) (if the case involves illegal
    drugs, check this item; otherwise,
    report as Commercial or Residential)

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
        Case Matter
    Writ–Other Limited Court Case
        Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
        Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
    (arising from provisionally complex
    case type listed above) (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of
        County)
    Confession of Judgment (non-
        domestic relations)
    Sister State Judgment
    Administrative Agency Award
        (not unpaid taxes)
    Petition/Certification of Entry of
        Judgment on Unpaid Taxes
    Other Enforcement of Judgment
        Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint (not specified
    above) (42)
    Declaratory Relief Only
    Injunctive Relief Only (non-
        harassment)
    Mechanics Lien
    Other Commercial Complaint
        Case (non-tort/non-complex)
    Other Civil Complaint
        (non-tort/non-complex)

**Miscellaneous Civil Petition**
Partnership and Corporate
    Governance (21)
Other Petition (not specified
    above) (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
        Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late
        Claim
    Other Civil Petition

## NOTICE TO PLAINTIFF

A Case Management Conference is set for:

**DATE:**   **APR-14-2021**

**TIME:**   **10:30AM**

**PLACE:**   **Department 610**
**400 McAllister Street**
**San Francisco, CA  94102-3680**

All parties must appear and comply with Local Rule 3.

---

CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than 15 days before the case management conference.  However, it would facilitate the issuance of a case management order  **without an appearance**  at the case management conference if the case management statement is filed and served twenty-five days before the case management conference.

---

Plaintiff must serve a copy of this notice upon each party to this action with the summons and complaint. Proof of service subsequently filed with this court shall so state.   **This case is eligible for electronic filing and service per Local Rule 2.11.  For more information, please visit the Court's website at www.sfsuperiorcourt.org under Online Services.**

**[DEFENDANTS: Attending the Case Management Conference does not take the place of filing a written response to the complaint. You must file a written response with the court within the time limit required by law. See Summons.]**

### ALTERNATIVE DISPUTE RESOLUTION REQUIREMENTS

---

**IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL CASE SHOULD PARTICIPATE IN MEDIATION, ARBITRATION, NEUTRAL EVALUATION,  AN EARLY SETTLEMENT CONFERENCE, OR OTHER APPROPRIATE FORM OF ALTERNATIVE DISPUTE RESOLUTION PRIOR TO A TRIAL.**

**(SEE LOCAL RULE 4)**

---

Plaintiff  **must**  serve a copy of the Alternative Dispute Resolution (ADR) Information Package on each defendant along with the complaint.  (CRC 3.221.) The ADR package may be accessed at www.sfsuperiorcourt.org/divisions/civil/dispute-resolution or you may request a paper copy from the filing clerk.  All counsel must discuss ADR with clients and opposing counsel and provide clients with a copy of the ADR Information Package prior to filing the Case Management Statement.

**Superior Court Alternative Dispute Resolution Administrator**
**400  McAllister Street, Room 103-A**
**San Francisco, CA  94102**
**(415) 551-3869**

**See Local Rules 3.3, 6.0 C and 10 B re stipulation to judge pro tem.**

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
APPLIED UNDERWRITERS, INC, an Omaha corporation transacting business in California, STEVEN MENZIES, an Individual, ALAN QUASHA, an Individual, and DOES 1-20 inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
RUSTY AREIAS, an Individual and MERCURY PUBLIC AFFAIRS, LLC, a Delaware corporation transacting business in California, assignees of California Strategies, LLC

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is: *(El nombre y dirección de la corte es):* SUPERIOR COURT OF SAN FRANCISCO 400 McAllister Street, San Francisco, CA 94102 | CASE NUMBER: *(Número del Caso):* CGC-20-587047 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
David J. Millstein, MILLSTEIN & ASSOCIATES, 100 The Embarcadero, Penthouse, San Francisco, CA 94105 (415) 348-0348

| DATE: *(Fecha)* November 9, 2020  NOV 2 3 2020 | CLERK OF THE COURT Clerk, by *(Secretario)* | , Deputy *(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010).)*

[SEAL]

BY FAX

**NOTICE TO THE PERSON SERVED:** You are served
1. [X] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*
3. [ ] on behalf of *(specify):*
   under: [ ] CCP 416.10 (corporation)        [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation)  [ ] CCP 416.70 (conservatee)
          [ ] CCP 416.40 (association or partnership)  [ ] CCP 416.90 (authorized person)
          [ ] other *(specify):*
4. [ ] by personal delivery on *(date)*

Page 1 of 1

| | | |
|---|---|---|
| Form Adopted for Mandatory Use Judicial Council of California SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465 *www.courts.ca.gov* |

POS-010

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br> DAVID J. MILLSTEIN, ESQ. (87878)<br>MILLSTEIN & ASSOCIATES<br>100 The Embarcadero, Penthouse<br>San Francisco, California 94105<br>   TELEPHONE NO.: (415) 348-0348    FAX NO. *(Optional):*<br>E-MAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name):* PLAINTIFF | FOR COURT USE ONLY |

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO**<br>STREET ADDRESS:<br>MAILING ADDRESS: 400 McAllister Street<br>CITY AND ZIP CODE: San Francisco, California 94102<br>BRANCH NAME: | ELECTRONICALLY<br>**F I L E D**<br>*Superior Court of California,*<br>*County of San Francisco*<br>**12/21/2020**<br>**Clerk of the Court**<br>BY: CAROL BALISTRERI<br>**Deputy Clerk** |

| | |
|---|---|
| PLAINTIFF/PETITIONER: RUSTY AREIAS, ET AL.<br><br>DEFENDANT/RESPONDENT: APPLIED UNDERSWRITERS, INC., ET. AL. | CASE NUMBER:<br>CGC 20 587947 |

| | |
|---|---|
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.:<br>W127082 |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:

   a. [x] summons

   b. [x] complaint

   c. [x] Alternative Dispute Resolution (ADR) package

   d. [x] Civil Case Cover Sheet *(served in complex cases only)*

   e. [ ] cross-complaint

   f. [x] other *(specify documents):* **NOTICE TO PLAINTIFF**

3. a. Party served *(specify name of party as shown on documents served):*

   **APPLIED UNDERWRITERS, INC.**

   b. [x] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*

   **MICHAEL K PERKINS, the registered agent for service of process**

4. Address where the party was served: **80 STONE PINE ROAD, SUITE 210**
                                        **HALF MOON BAY, CA 94019**

5. I served the party *(check proper box)*

   a. [ ] **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):*         (2) at *(time):*

   b. [x] **by substituted service.** On *(date):* **11/30/2020** at *(time):* **8:16 a.m.** I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*

      **Daniel Davis, Administrative Assistant, Authorized by the agent for service to accept legal documents.**

      (1) [x] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

      (2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

      (3) [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

      (4) [x] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date):*    from *(city):*     **or** [x] a declaration of mailing is attached.

      (5) [ ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

| PLAINTIFF/PETITIONER: | RUSTY AREIAS, ET AL. | CASE NUMBER: |
|---|---|---|
| DEFENDANT/RESPONDENT: | APPLIED UNDERSWRITERS, INC., ET. AL. | CGC 20 587947 |

5.   c.   ☐   **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

(1)   on *(date):*                                          (2)   from *(city):*

(3)   ☐   with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me.  *(Attach completed* Notice and Acknowledgement of Receipt.*)* (Code Civ. Proc., § 415.30.)

(4)   ☐   to an address outside California with return receipt requested.  (Code Civ. Proc., § 415.40.)

d.   ☐   **by other means** *(specify means of service and authorizing code section):*

☐   Additional page describing service is attached.

6.   The "Notice to the Person Served" (on the summons) was completed as follows:

a.   ☐   as an individual defendant.

b.   ☐   as the person sued under the fictitious name of *(specify):*

c.   ☐   as occupant.

d.   ☒   On behalf of *(specify):* **APPLIED UNDERWRITERS, INC.**
under the following Code of Civil Procedure section:

☒ 416.10 (corporation)                          ☐ 415.95 (business organization, form unknown)
☐ 416.20 (defunct corporation)                  ☐ 416.60 (minor)
☐ 416.30 (joint stock company/association)      ☐ 416.70 (ward or conservatee)
☐ 416.40 (association or partnership)           ☐ 416.90 (authorized person)
☐ 416.50 (public entity)                        ☐ 415.46 (occupant)
                                                ☐ other:

7.   **Person who served papers**

a.   Name: **Stephen Sabol**

b.   Address: **Wheels of Justice, 848 Folsom Street, Suite 102, San Francisco, California  94107**

c.   Telephone number: **(415) 546-6000**

d.   **The fee** for service was: $

e.   I am:

(1)   ☐   not a registered California process server.

(2)   ☐   exempt from registration under Business and Professions Code section 22350(b).

(3)   ☒   a registered California process server:

(i)   ☐ owner   ☐ employee   ☒ independent contractor.

(ii)   Registration No.: **2019-0001267**

(iii)   County: **San Francisco**

8.   ☒   **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

or

9.   ☐   **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: **November 30, 2020**

**Stephen Sabol**
_____
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

_____
(SIGNATURE )

| Attorney Or Party Without Attorney (Name and Address) | Telephone: | FOR COURT USE ONLY |
|---|---|---|
| DAVID J. MILLSTEIN, ESQ. (87878)<br>MILLSTEIN & ASSOCIATES<br>100 The Embarcadero, Penthouse<br>San Francisco, California  94105 | (415) 348-0348 | |

Ref. No. Or File No.
W127082

Attorneys for:   PLAINTIFF

Insert name of court, judicial district and branch court, if any:
SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE CITY AND COUNTY OF SAN FRANCISCO

Plaintiff:
RUSTY AREIAS, ET AL.

Defendant:
APPLIED UNDERSWRITERS, INC., ET. AL.

| **POS BY  MAIL** | Hearing Date:<br>4/14/2021 | Time:<br>10:30 a.m. | Dept/Div:<br>610 | Case Number:<br>CGC 20 587947 |
|---|---|---|---|---|

At the time of service I was at least 18 years of age and not a party to this action.

On **November 30, 2020** , I served the within :

        **SUMMONS;**
        **COMPLAINT;**
        **CIVIL CASE COVER SHEET;**
        **ALTERNATIVE DISPUTE RESOLUTION (ADR) PACKAGE;**
        **NOTICE TO PLAINTIFF**

on the defendant in the within action by placing a true copy in a sealed envelope with postage fully
prepaid for first class, in the United States mail at San Francisco, California, addressed as follows:

        **APPLIED UNDERWRITERS, INC.**
        **c/o MICHAEL K PERKINS, the registered agent for service of process**
        **80 STONE PINE ROAD, SUITE 210**
        **HALF MOON BAY, CA 94019**

Person serving:
**Christopher T. Tran**
**Wheels of Justice**
848 Folsom Street, Suite 102
San Francisco, California  94107
Phone: (415)  546-6000
Fee for service:

☐ not a registered California process server.
☐ exempt from registration under B&P Section 22350(b).
☒ a registered California process server
    ☐ owner   ☒ employee   ☐ independent contractor
Reg No.: **2019-0001433**  County: **San Francisco**

I declare under penalty of perjury under the laws of the State of California that the foregoing
is true and correct.

Date: **November 30, 2020**

Signature: _____

**Christopher T. Tran**



Judicial Council form, rule 982(a)  (23)

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| DAVID J. MILLSTEIN, ESQ. (87878)<br>MILLSTEIN & ASSOCIATES<br>100 The Embarcadero, Penthouse<br>San Francisco, California 94105<br>TELEPHONE NO.: (415) 348-0348   FAX NO. *(Optional):*<br>E-MAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name):* PLAINTIFF | **ELECTRONICALLY**<br>**F I L E D**<br>*Superior Court of California,*<br>*County of San Francisco*<br>**12/21/2020**<br>**Clerk of the Court**<br>**BY: CAROL BALISTRERI**<br>**Deputy Clerk** |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF **SAN FRANCISCO** | |
|---|---|
| STREET ADDRESS:<br>MAILING ADDRESS: 400 McAllister Street<br>CITY AND ZIP CODE: San Francisco, California 94102<br>BRANCH NAME: | |

| PLAINTIFF/PETITIONER: RUSTY AREIAS, ET AL.<br><br>DEFENDANT/RESPONDENT: APPLIED UNDERWRITERS, INC., ET. AL. | CASE NUMBER:<br>CGC 20 587947 |
|---|---|

| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.:<br>W127539 |
|---|---|

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:
   - a. ☐ summons
   - b. ☐ complaint
   - c. ☐ Alternative Dispute Resolution (ADR) package
   - d. ☐ Civil Case Cover Sheet *(served in complex cases only)*
   - e. ☐ cross-complaint
   - f. ☒ other *(specify documents):* SUMMONS; COMPLAINT; CIVIL CASE COVER SHEET; ALTERNATIVE DISPUTE RESOLUTION (ADR) PACKAGE; NOTICE TO PLAINTIFF

3. a. Party served *(specify name of party as shown on documents served):*

   STEVEN MENZIES

   b. ☐ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*

4. Address where the party was served: 950 TOWER LN, Suite 1400
   FOSTER CITY, CA 94404

5. I served the party *(check proper box)*
   - a. ☐ **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):*      (2) at *(time):*
   - b. ☒ **by substituted service.** On *(date):* 12/21/2020 at *(time):* 9:15 am I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*

     Served Jeff "Doe" (refused to give name), manager (W/M/5'9"/58/180/Gray)

     - (1) ☒ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.
     - (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.
     - (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.
     - (4) ☒ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date):* 12/21/2020 from *(city):* San Francisco, California or ☐ a declaration of mailing is attached.
     - (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-010 [Rev. January 1, 2007] | **PROOF OF SERVICE OF SUMMONS** | Code of Civil Procedure, § 417.10 |
|---|---|---|

| PLAINTIFF/PETITIONER: | RUSTY AREIAS, ET AL. | CASE NUMBER: |
|---|---|---|
| DEFENDANT/RESPONDENT: | APPLIED UNDERWRITERS, INC., ET. AL. | CGC 20 587947 |

5.  c. [  ] **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

  (1) on *(date)*:                                    (2) from *(city)*:

  (3) [  ] with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me.  *(Attach completed* Notice and Acknowledgement of Receipt.*)* (Code Civ. Proc., § 415.30.)
  (4) [  ] to an address outside California with return receipt requested.  (Code Civ. Proc., § 415.40.)

  d. [  ] **by other means** *(specify means of service and authorizing code section)*:

  [  ] Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
  a. [X] as an individual defendant.
  b. [  ] as the person sued under the fictitious name of *(specify)*:
  c. [  ] as occupant.
  d. [  ] On behalf of *(specify)*:
    under the following Code of Civil Procedure section:
    [  ] 416.10 (corporation)                    [  ] 415.95 (business organization, form unknown)
    [  ] 416.20 (defunct corporation)            [  ] 416.60 (minor)
    [  ] 416.30 (joint stock company/association) [  ] 416.70 (ward or conservatee)
    [  ] 416.40 (association or partnership)      [  ] 416.90 (authorized person)
    [  ] 416.50 (public entity)                   [  ] 415.46 (occupant)
                                                  [  ] other:

7. **Person who served papers**
  a. Name: Mahesh Bhagat
  b. Address: Wheels of Justice, 848 Folsom Street, Suite 102, San Francisco, California 94107
  c. Telephone number: (415) 546-6000
  d. **The fee** for service was: $
  e. I am:
    (1) [  ] not a registered California process server.
    (2) [  ] exempt from registration under Business and Professions Code section 22350(b).
    (3) [X] a registered California process server:
      (i) [  ] owner [  ] employee [X] independent contractor.
      (ii) Registration No.: 2018-0001414
      (iii) County: San Francisco

8. [X] I **declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

  or

9. [  ] I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Date: December 21, 2020

Mahesh Bhagat
_____
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

► _____
(SIGNATURE )

DAVID J. MILLSTEIN, ESQ. (87878)
MILLSTEIN & ASSOCIATES
100 The Embarcadero, Penthouse
San Francisco, California 94105
Telephone: (415) 348-0348
Attorneys for: PLAINTIFF

SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE CITY AND COUNTY OF SAN FRANCISCO

Plaintiff(s)  : RUSTY AREIAS, ET AL.
Defendant(s) : APPLIED UNDERWRITERS, INC., ET. AL.

| | |
|---|---|
| Hearing Date: | 4/14/2021 |
| Time: 10:30 a.m.  Dept. 610 | |

| Invoice_No W127332 | DECLARATION RE DILIGENCE | Case No. CGC 20 587947 |
|---|---|---|

I Chuck Casey _____, and any employees or independent contractors retained by
WHEELS OF JUSTICE are and were on the dates mentioned herein over the age of eighteen years
I make this declaration based on personal, first hand knowledge, and if called before this court to testify
as to any matters contained herein, I am competent to and will do so.

**STEVEN MENZIES**

SUMMONS; COMPLAINT; CIVIL CASE COVER SHEET; ALTERNATIVE DISPUTE RESOLUTION (ADR)
PACKAGE; NOTICE TO PLAINTIFF

(3)  Alternate Address :  ,
(2)  Business Address :  ,
(1)  Residence Address:  6515 N 159TH ST, Omaha, Ne 68116-4058

Date and time of attempt(s):

11/25/2020    6:14 pm
Received by email  (30 pages)

12/10/2020    6:30 pm
No Answer. Front blinds have been shut. No cars in the driveway.Address has been verified with county records as Steven Menzies owns the
property.

12/11/2020    8:00 pm
No Answer. Same as before.

12/15/2020    11:30 am
No Answer. It's possible they are out of town. No cars in the driveway. Have not seen any neighbors to speak with due to the cold weather.

12/16/2020    9:00 am
No Answer. Blinds shut. No cars in the driveway.

12/16/2020    6:30 pm
No Answer. Blinds shut. No cars in the driveway. House all dark

12/19/2020    7:50 am
No Answer.

This Declaration is based upon business records maintained in the normal course of business
I declare under penalty of perjury under the laws of the State of California that the foregoing is
true and correct.
Executed on  December 9, 2020              Signature: _____
                                                    Chuck Casey

**WHEELS OF JUSTICE, 848 Folsom Street, Suite 102, San Francisco, California 94107**