**BOIES SCHILLER FLEXNER LLP**
Maxwell V. Pritt (SBN 253155)
mpritt@bsfllp.com
Antonio L. Ingram II (SBN 300528)
aingram@bsfllp.com
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Tel: (415) 293-6800
Fax: (415) 293-6899

*Attorneys for Defendants*
APPLIED UNDERWRITERS, INC, STEVEN MENZIES, and ALAN QUASHA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUSTY AREIAS, an individual, and MERCURY PUBLIC AFFAIRS, LLC, a Delaware corporation transacting business in California, assignees of California Strategies, LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>APPLIED UNDERWRITERS, INC, a Nebraska corporation, STEVEN MENZIES, an individual, ALAN QUASHA, an individual, and DOES 1-20, inclusive,<br><br>Defendants. | Case No. 3:21-CV-00023-TSH<br><br>**DEFENDANTS' NOTICE OF MOTION AND ANTI-SLAPP MOTION TO STRIKE COUNTS III AND VII OF THE COMPLAINT**<br><br>Hearing Date: February 11, 2021<br>Time: 10:00 a.m.<br>Place: Courtroom G<br>Judge: The Honorable Thomas S. Hixson |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on Thursday, February 11, 2021, at 10:00 a.m.,[1] or as soon thereafter as the matter may be heard in the above-entitled Court, Defendants Applied Underwriters Inc., Steven Menzies, and Alan Quasha (collectively, "Defendants") hereby bring for hearing, in Courtroom G of the United States Courthouse located at 450 Golden Gate Avenue in San Francisco, California 94102 their Anti-SLAPP Motion to Strike Counts III and VII of the Complaint filed by Plaintiffs Rusty Areias and Mercury Public Affairs, LLC (collectively, "Plaintiffs").

Defendants specially move the Court to strike Counts III and VII pursuant to California Code of Civil Procedure § 425.16, as those claims are based entirely on actions protected by Defendants' free speech rights under the First Amendment of the United States Constitution. Defendants expressly reserve and do not waive their right to seek by separate motion an award of costs and attorneys' fees pursuant to California Code of Civil Procedure § 425.16(c),[2] and to answer or move to dismiss the complaint pursuant to Federal Rules of Civil Procedure 11 and/or 12.

This Anti-SLAPP Motion to Strike is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, any Reply to this Motion, all pleadings and papers on file

---

[1] California Code of Civil Procedure § 425.16 (f) requires a hearing to be set within 30 days of filing the motion unless docket conditions of the court require a later hearing. The requirement under N.D. Cal. Civil Local Rule 7-2 that motions must be noticed for at least 35 days after a motion has been filed constitutes a docket condition justifying a later hearing. *See Ryan v. Editions Ltd. W., Inc.*, No. C 06-4812 PVT, 2006 WL 3707894, at *1 (N.D. Cal. Dec. 14, 2006). In addition, the Standing Order for Civil Cases Before Judge Hixson provides that motions may be noticed for any Thursday at 10:00 a.m., consistent with the 35-day notice period in Local Rule 7-2(a). Thus, noticing a hearing on the instant motion for Thursday, February 11, 2021 at 10:00 a.m. is proper.

[2] Defendants intend to move for attorneys' fees and costs by noticed motion after resolution of this Anti-SLAPP Motion to Strike. *See Melbostad v. Fisher*, 165 Cal. App. 4th 987, 992 (2008) ("In general, the party prevailing on a special motion to strike may seek an attorney fees award through three different avenues: simultaneously with litigating the special motion to strike, by a subsequent noticed motion, or as part of a cost memorandum at the conclusion of the litigation.")

with the Court, and such oral and written evidence as may be presented at any hearing on this Motion.

Dated: January 5, 2021                                BOIES SCHILLER FLEXNER LLP

                                        By:   */s/ Maxwell V. Pritt*
                                                Maxwell V. Pritt
                                                *Attorneys for Defendants*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................................1

RELEVANT FACTUAL BACKGROUND .....................................................................................1

    1.     EquityComp® ..........................................................................................................1

    2.     Attempted Redomestication of CIC ......................................................................3

    3.     CDI's *Ex Parte* Conservation of CIC .....................................................................4

ARGUMENT .....................................................................................................................................5

    I.     The Challenged Conduct Arises from Protected First Amendment Speech. .............6

    II.     Plaintiffs Cannot Meet Their Burden to Show a Probability of Prevailing On Counts III and VII. .................................................................................................8

CONCLUSION ................................................................................................................................12

# TABLE OF AUTHORITIES

**Cases**

*Buckley v. Valeo*,
    424 U.S. 1 (1976) ................................................................................................................ 7

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*,
    222 Cal. App. 3d 1371 (Ct. App. 1990), *as modified on denial of reh'g* (Oct. 31, 2001) 11, 12

*City of Cotati v. Cashman*,
    29 Cal. 4th 69 (2002) ......................................................................................................... 6

*City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*,
    43 Cal. 4th 375 (2008) ....................................................................................................... 9

*Collier v. Harris*,
    240 Cal. App. 4th 41 (2015), *as modified* (Sept. 1, 2015) ................................................. 7

*Cross v. Cooper*,
    197 Cal. App. 4th 357 (2011), *as modified on denial of reh'g* (Aug. 4, 2011) .................. 8

*Dienes v. FCA US LLC*,
    No. 16-cv-1812, 2018 WL 1258118 (S.D. Cal. Mar. 12, 2018) ........................................ 9

*Garcia v. Gen. Motors LLC*,
    No. 18-cv-1313, 2018 WL 6460196 (E.D. Cal. Dec. 10, 2018) ...................................... 10

*LiMandri v. Judkins*,
    52 Cal. App. 4th 326 (1997) .............................................................................................. 9

*Lyons v. Coxcom, Inc.*,
    718 F. Supp. 2d 1232 (S.D. Cal. 2009) ........................................................................... 11

*Moncada v. West Coast Quartz Corp.*,
    221 Cal. App. 4th 468 (2013) ............................................................................................ 9

*New Show Studios LLC v. Needle*,
    No. 14-cv-1250, 2014 WL 12495640 (C.D. Cal. Dec. 29, 2014) ...................................... 6

*Paul for Council v. Hanyecz*,
    85 Cal. App. 4th 1356 (2001) ............................................................................................ 7

*Pet Food Express, Ltd. v. Applied Underwriters, Inc.*,
    No. 2:16-CV-01211 WBS AC, 2019 WL 4318584 (E.D. Cal. Sept. 12, 2019) ................. 2

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
    890 F.3d 828 (9th Cir.), *amended*, 897 F.3d 1224 (9th Cir. 2018) .................................... 8

*Sarver v. Chartier*,
   813 F.3d 891(9th Cir. 2016) ................................................................................................ 6, 8

*Scott v. Metabolife Int'l, Inc.*,
   115 Cal. App. 4th 404 (2004) ..................................................................................................... 6

*Shasta Linen Supply, Inc. v. Applied Underwriters, Inc.*,
   Nos. 2:16-cv-158 WBS AC, 2:16-cv-1211 WBS AC, 2019 WL 358517 (E.D. Cal. Jan. 29, 2019) ........................................................................................................................................ 2

*Smith v. Int'l Bhd. of Elec. Workers*,
   109 Cal. App. 4th 1637 (2003) ................................................................................................ 11

*Soundgarden v. UMG Recordings, Inc.*,
   No. 19-cv5449, 2020 WL 1815855 (C.D. Cal. Apr. 6, 2020) .................................................. 11

*Sweetwater Union High Sch. Dist. v. Gilbane Bldg. Co.*,
   199 Cal. Rptr. 3d 659 (Ct. App.) ................................................................................................ 7

*Sweetwater Union Sch. Dist. v. Gilbane Bldg. Co.*,
   371 P.3d 223 (Cal. 2016), *aff'd,* 6 Cal. 5th 931, 434 P.3d 1152 (2019) .................................... 7

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ............................................................................................. 1, 5

*Wolf v. Superior Court,*
   107 Cal.App.4th 25 (2003) ................................................................................................. 9, 10

**<u>Rules</u>**

Cal. Civ. Proc. Code § 425.16 ....................................................................................................*passim*

California Insurance Code § 1011(c) .............................................................................................. 5

# PRELIMINARY STATEMENT

Defendants Applied Underwriters, Inc., Steven Menzies, and Alan Quasha ("Defendants") respectfully request that Counts III and VII of the Complaint filed by Plaintiffs Rusty Areias and Mercury Public Affairs, LLC (collectively, "Plaintiffs") be stricken pursuant to California Code of Civil Procedure § 425.16.

The purpose of Civil Code of Procedure § 425.16, California's anti-SLAPP statute, is to prevent litigation from being used as a costly and time-consuming tactic to chill free speech rights, and thus it allows for early dismissal of meritless claims and recovery of attorneys' fees and costs. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1109, 1111 (9th Cir. 2003); *see generally* Cal. Civ. Proc. Code § 425.16. Pursuant to § 425.16, the Court must strike a claim based on conduct in furtherance of the right to free speech unless the plaintiff can show a probability of success on its claim.

Plaintiffs' allegations show why Counts III and VII must be stricken. Plaintiffs allege that Defendants failed to disclose to Plaintiffs that Defendants contributed to the political campaign of Ricardo Lara, the current Commissioner of the California Department of Insurance—contributions that Plaintiffs absurdly allege were "unauthorized" and constituted a "bribe." Plaintiffs use Defendants' protected speech as the basis for a meritless fraud claim that lacks any allegations regarding a duty to disclose, and an equally meritless claim that Defendants breached the covenant of good faith and fair dealing inherent to the parties' consulting contract, which is superfluous to Plaintiffs' breach of contract claim. Plaintiffs' decision to sue Defendants based on their past political contributions amounts to an improper attempt to chill Defendants' free speech rights and harass Defendants. This Court should reject Plaintiffs' tactics and strike Counts III and VII of the Complaint.

# RELEVANT FACTUAL BACKGROUND

1. **EquityComp®**

Defendant Applied Underwriters, Inc. ("Applied") is a Nebraska corporation that writes workers' compensation insurance in all 50 states through subsidiary companies, including

California Insurance Company ("CIC").  Defendant Steven Menzies ("Menzies") is Applied's founder and CEO.

Before 2016, CIC offered a workers' compensation program to California employers called EquityComp®.  EquityComp® was a loss sensitive workers' compensation insurance program that both provided participant employers with workers' compensation insurance coverage required under California law and gave employers the opportunity to share in underwriting profits if their claims loss experience was favorable.  The California Department of Insurance ("CDI"), which regulates CIC in California, challenged the legality of EquityComp® in 2016, but in 2017 entered into a settlement agreement with CIC and Applied Underwriters Captive Risk Assurance Company, Inc., an affiliate of Applied at that time, that allowed the program to continue in a new, but substantively identical, form.  The settlement agreement left disputes over the prior form of EquityComp® to private litigation.  In the years that followed, Applied and its affiliates defeated class actions relating to EquityComp® in California, New York, and Nebraska, and no adverse judgement has been entered against Applied or CIC.  In addition to denying class certification to California employers that entered into EquityComp®, *see Shasta Linen Supply, Inc. v. Applied Underwriters, Inc.*, Nos. 2:16-cv-158 WBS AC, 2:16-cv-1211 WBS AC, 2019 WL 358517 (E.D. Cal. Jan. 29, 2019), the United States District Court for the Eastern District of California held that the prior form of EquityComp® was not void as a matter of law, *see Pet Food Express, Ltd. v. Applied Underwriters, Inc.*, No. 2:16-CV-01211 WBS AC, 2019 WL 4318584 (E.D. Cal. Sept. 12, 2019).

Following the EquityComp® settlement, individuals associated with Applied and CIC legally donated to the campaign committee of Ricardo Lara, who was running for election as Commissioner of the CDI.  Specifically, in April 2019, Stephen Acunto, a spokesperson for Applied, and his wife, Carole Acunto, donated $31,000 total to the Lara campaign.  Stuart Liner, an attorney who represents Applied, and his wife, Stephanie Liner, also contributed $21,600 to the Lara campaign.

**2. Attempted Redomestication of CIC**

In January 2019, Menzies, who was an indirect owner of 11.5% of CIC's shares, entered into an agreement with Berkshire Hathaway Inc. ("Berkshire")—which at that time owned 81% of the holding company that indirectly owned CIC—to purchase Berkshire's interest in CIC. A related part of this transaction involved the sale of Applied to a purchasing group led by Quadrant Management, a New York investment management firm led by Defendant Alan Quasha. The agreement with Berkshire included a $50 million "breakup fee" if the transaction was not completed by September 30, 2019. In California, Menzies had to submit a "Form A" application to the CDI for approval.

Menzies submitted his first Form A to CDI on April 9, 2019. CDI then requested supplemental information. So Menzies submitted a second Form A on June 12, 2019, but CDI again requested more information. Given the stakes of the Form A approval, Menzies and Applied contracted for the assistance of consulting firm California Strategies LLC[3]. According to the parties' contract, signed July 8, 2019 (the "Consulting Agreement," *see* Exhibit 1 to Plaintiffs' Complaint), Applied would pay California Strategies LLC a success fee of $1,000,000 "for assisting with obtaining approval of California Insurance Company's ('CIC') Form A application with the California Department of Insurance . . . or approval of CIC's redomestication from California to the State of Illinois, either of which must occur on or before September 30, 2019 unless Client and Consultant mutually agree in writing to a later date or to redomestication to a state other than Illinois."

On July 7, 2019, an article was published in the San Diego Union-Tribune discussing CDI Commissioner Ricardo Lara's campaign donations, including the donations from Stephen and Carole Acunto. The Tribune wrote subsequent articles covering donations to Lara's campaign, including donations by the Acuntos as well as Stuart and Stephanie Liner, on July 31, 2019 and August 27, 2019.

---

[3] California Strategies LLC later assigned the value of its contract to Plaintiffs. *See* Compl. ¶¶ 1-2.

1    Menzies addressed all of CDI's outstanding concerns regarding the Berkshire transaction
2  in the third Form A, which he submitted on September 7, 2019.  Nonetheless, on the afternoon of
3  Friday, September 27, 2019, the final business day before the September 30, 2019 transaction
4  deadline, CDI inexplicably stated that it would "neither approve nor disapprove the pending
5  application prior to September 30, 2019," which put Menzies at imminent risk of forfeiting the $50
6  million deposit.
7    As a result, Menzies negotiated a 10-day extension of the transaction closing at a cost of
8  $10 million not to be credited against the purchase price.  On October 1, 2019, Applied and
9  California Strategies, LLC also amended their contract to "be extended for a one-month period,"
10 while "[a]ll other terms shall remain the same."  *See* Complaint, Ex. 2.  Menzies then contacted
11 the New Mexico Superintendent of Insurance, John G. Franchini, to determine if the transaction
12 could instead be approved under the supervision of the New Mexico Department of Insurance.
13 Superintendent Franchini proposed to redomesticate CIC to New Mexico under an expedited
14 approval process, permitting the sale approval and closing before the extended deadline to
15 consummate the transaction.  Menzies worked with Superintendent Franchini to finalize the sale
16 and obtain all necessary approvals, including the formation of a new entity in New Mexico, CIC II
17 (since renamed California Insurance Company, a New Mexico corporation), which would
18 ultimately merge with CIC.  Superintendent Franchini approved CIC's New Mexico Form A in a
19 hearing on October 9, 2019, permitting CIC to redomesticate to New Mexico via merger with CIC
20 II.
21    **3.  CDI's *Ex Parte* Conservation of CIC**
22    On October 18, 2019, CDI wrote to Menzies and Applied to express its view that if CIC
23 merged into CIC II, CIC's certificate of authority "will be extinguished by operation of law and
24 the surviving entity will not be qualified to transact insurance in California."  Following this
25 correspondence, Menzies and Applied entered into discussions with CDI in an attempt to resolve
26 CDI's concerns about the proposed CIC merger.  In the course of these discussions, CDI requested
27 that CIC and CIC II refrain from taking additional steps to complete their merger, as CDI first
28 wanted to meet and resolve the Form A.  CIC thereafter voluntarily refrained from taking further

1  action on the merger, even though Superintendent Franchini had already approved it under New
2  Mexico law.
3     Then, on November 4, 2019, without any notice to CIC, Menzies, or Applied, CDI filed an
4  *ex parte* application in the Superior Court of California, County of San Mateo requesting the
5  extraordinary remedy of placing CIC in conservation under the Commissioner's authority.  The
6  Superior Court entered the CDI's proposed order *ex parte*, imposing a conservatorship over CIC
7  and placing it under the CDI's control pursuant to California Insurance Code § 1011(c).  That
8  provision permits a conservatorship in several circumstances, including where an entity, "without
9  first obtaining the consent in writing of the commissioner, has transferred, or attempted to transfer,
10 substantially its entire property or business or, without consent, has entered into any transaction
11 the effect of which is to merge, consolidate, or reinsure substantially its entire property or business
12 in or with the property or business of any other person."  CIC has been subject to that conservation
13 order from November 4, 2019 through the present.  CDI has maintained, and continues to
14 maintain, control over all of the assets and operations of CIC, and accordingly the merger between
15 CIC and CIC II has not been effected or completed.  CIC cannot be successfully redomesticated to
16 New Mexico until the Superior Court's Conservation Order is stayed or the merger is otherwise
17 permitted to proceed.

## ARGUMENT

19    Counts III and VII of Plaintiffs' Complaint should be stricken pursuant to California's anti-
20 SLAPP statute, Code of Civil Procedure § 425.16.  The statute provides for the dismissal of "a
21 cause of action against a [defendant] arising from" the defendant's exercise of its federal
22 constitutional right to free speech in connection with a public issue.  Cal. Civ. Proc. Code §
23 425.16(b)(1).  It was "enacted to allow early dismissal of meritless first amendment cases aimed at
24 chilling expression through costly, time-consuming litigation."  *Vess*, 317 F.3d at 1109; *see also*
25 Cal. Civ. Proc. Code § 425.16(a) (the purpose of the anti-SLAPP statute is to "encourage
26 continued participation in matters of public significance," and preventing participation from
27 "be[ing] chilled through abuse of the judicial process").  Thus, California's anti-SLAPP statute is
28 construed broadly.  *See* Cal. Civ. Proc. Code § 425.16(a).  A defendant need not move to strike an

1   entire pleading; rather, it may move to strike individual claims, each of which is analyzed
2   separately.  *See generally New Show Studios LLC v. Needle*, No. 14-cv-1250, 2014 WL 12495640
3   (C.D. Cal. Dec. 29, 2014) (granting in part and denying in part motion to strike certain causes of
4   action).

        The Court evaluates a motion to strike a cause of action under California's anti-SLAPP statute in two steps.  *Sarver v. Chartier*, 813 F.3d 891, 901 (9th Cir. 2016).  First, Defendants must "make a prima facie showing that the plaintiff's suit arises from an act by the defendant made in connection with a public issue in furtherance of the defendant's right to free speech under the United States or California Constitution." *Id.* (citation and quotation omitted).  Then, "if the defendant has made such showing, [the court] evaluate[s] whether the plaintiff has established a reasonable probability that the plaintiff will prevail on his or her claim." *Id.* (citation, quotation, and alterations omitted).

        **I.**    **The Challenged Conduct Arises from Protected First Amendment Speech.**

        In determining whether California's anti-SLAPP statute applies, the Court must consider the "principle thrust or gravamen of the plaintiff's cause of action." *Scott v. Metabolife Int'l, Inc.*, 115 Cal. App. 4th 404, 414 (2004).  "[T]he critical point is whether the plaintiff's cause of action itself was based on an act in furtherance of the defendant's right of petition or free speech." *City of Cotati v. Cashman*, 29 Cal. 4th 69, 78 (2002) (emphasis omitted).  "A defendant meets this burden by demonstrating that the act underlying the plaintiff's cause fits one of the categories spelled out in section 425.16, subdivision (e)." *Id.* at 78 (citation and quotation omitted).  Included among these categories are "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest," and "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."  Cal. Civ. Proc. Code § 425.16(e)(3), (4).

        Count III of the Complaint alleges that Defendants committed fraud by representing to Plaintiffs (1) that Applied and CIC "were in good standing with the California Department of Insurance, and (2) that Applied and CIC "had not engaged in any improper conduct that would

1  jeopardize the approval of FORM-A or any redomestication effort with the CDI." Complaint ¶ 53.
2  Plaintiffs allege that these representations were false because Applied "directly or indirectly made
3  unauthorized campaign contributions of $53,000 to the California Insurance Commissioner
4  Ricardo Lara election campaign." *Id.*, ¶ 54.  Further, Count VII of the Complaint alleges
5  Defendants breached the implied covenant of good faith and fair dealing because "Defendants
6  withheld material facts about claims filed against [Applied] and its attempt to bribe the California
7  Insurance Commissioner, making it onerous and extremely difficult for the plaintiffs to perform
8  the contract," and "[i]n doing so, the defendants did not act fairly and in good faith."  *Id.*, ¶ 93.

      Both Counts III and VII of the Complaint are explicitly based on acts in furtherance of Defendants' right to speak through contributions to the political campaign of the California Insurance Commissioner.  It is well established that "a political campaign contribution is a type of political speech."  *Paul for Council v. Hanyecz*, 85 Cal. App. 4th 1356, 1365–66 (2001) (citing *Buckley v. Valeo*, 424 U.S. 1, 21 (1976) ("A contribution serves as a general expression of support for the candidate and his views")).  Indeed, courts routinely have held that causes of action premised on a party's political campaign contributions to be public speech subject to the protection of California's anti-SLAPP statute.  *See, e.g.*, *Sweetwater Union High Sch. Dist. v. Gilbane Bldg. Co.*, 199 Cal. Rptr. 3d 659, 681 (Ct. App.), *review granted and opinion superseded sub nom. Sweetwater Union Sch. Dist. v. Gilbane Bldg. Co.*, 371 P.3d 223 (Cal. 2016), *aff'd,* 6 Cal. 5th 931, 434 P.3d 1152 (2019) (where complaint alleges defendant engaged in a "pay to play" scheme involving campaign contributions, it is clear that "the principal thrust or gravamen of the complaint involves a challenge to political activity, thereby triggering the protection of the anti-SLAPP statute").

      Though Plaintiffs use the words "unauthorized" and "bribe," they do not expressly allege that Defendants' political contributions themselves were illegal and therefore outside of the ambit of the anti-SLAPP statute.  *See Collier v. Harris,* 240 Cal. App. 4th 41, 55 (2015), *as modified* (Sept. 1, 2015) ("although political campaign contributions generally are protected speech activity, a defendant whose contributions constitute illegal money laundering as a matter of law may not invoke the anti-SLAPP statute to strike claims based on those contributions"); *Paul*

*for Council*, 85 Cal. App. 4th at 1366 ("Thus, while it is technically true that laundering campaign contributions is an act in furtherance of the giving of such contributions, that is, in furtherance of an act of free speech, we reject the notion that section 425.16 exists to protect such illegal activity. Section 425.16 protects a defendant from retaliatory action for his or her exercise of *legitimate* rights"). Even if Plaintiffs had made such allegations, however, "in the context of an anti-SLAPP motion, illegal conduct precludes anti-SLAPP relief only if the defendant effectively concedes that his or her conduct was illegal or there is uncontested evidence that conclusively establishes illegal conduct as a matter of law." *Cross v. Cooper*, 197 Cal. App. 4th 357, 384 (2011), *as modified on denial of reh'g* (Aug. 4, 2011). Defendants do not concede—and in fact contest—that any political contributions were illegal, nor is there any such evidence in this case.

Applying the California legislature's mandate to construe the anti-SLAPP statute broadly, it is apparent that Counts III and VII of the Complaint are based on acts made in furtherance of Defendant's right to speech in the form of political campaign contributions, and therefore must be stricken.

### II.  Plaintiffs Cannot Meet Their Burden to Show a Probability of Prevailing On Counts III and VII.

Having shown that Defendants' political contributions clearly are protected activity, Plaintiffs bear the burden of showing a probability of success on Counts III and VII. To do so, Plaintiffs "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Sarver*, 813 F.3d at 901 (quotations omitted). "The district court, in making its decision, considers the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833 (9th Cir.), *amended*, 897 F.3d 1224 (9th Cir. 2018) (citing Cal. Civ. Proc. Code. § 425.16). The analysis of an anti-SLAPP motion to strike based on legal challenges is made under the standards for Federal Rules of Civil Procedure 8 and 12. *Id.* at 834. Plaintiffs have not—and cannot—show that their complaint is legally sufficient, and no facts that

they may submit could alter the fact that judgment for Defendants is warranted on either Count III or VII.

*First,* with respect to Count III—Plaintiffs' fraud claim—Plaintiffs fail to plead, let alone plead with even a modicum of the particularity required under Rule 9(b), any duty to disclose on the part of Defendants.  "To prevail on a fraudulent inducement cause of action, a plaintiff must prove: (1) concealment of a material fact, (2) which defendant had a duty to disclose, (3) the defendant intentionally concealed the fact with the intent to defraud, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed fact, and (5) as a result, sustained damage." *Dienes v. FCA US LLC*, No. 16-cv-1812, 2018 WL 1258118, at *1 (S.D. Cal. Mar. 12, 2018) (citing *Moncada v. West Coast Quartz Corp.*, 221 Cal. App. 4th 468, 775 (2013)).  Plaintiffs allege that Defendants' contributions to Lara's campaign for California Insurance Commissioner, and the existence of lawsuits relating to the EquityComp® program, were material facts that Defendants had a duty to disclose in advance of signing the Consulting Agreement.  But there are only "four circumstances in which nondisclosure or concealment may constitute actionable fraud: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts." *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997).   None of these circumstances apply here.

Plaintiffs do not, and cannot, allege that a fiduciary duty existed between Plaintiffs and Defendants by virtue of the Consulting Agreement.  While "[e]very contract requires one party to repose an element of trust and confidence in the other to perform," the mere fact of a contract, even one with a disparity of bargaining power, does not create a fiduciary duty under California law.  *City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 43 Cal. 4th 375, 389 (2008); *see also Wolf v. Superior Court,* 107 Cal.App.4th 25, 30 (2003) ("the contractual right to contingent compensation in the control of another has never, by itself, been sufficient to create a fiduciary relationship where one would not otherwise exist").  Plaintiffs do not, and indeed cannot, allege any other relationship with Defendants that would give rise to a fiduciary relationship, which "in the

1   commercial context include trustee/beneficiary, directors and majority shareholders of a
2   corporation, business partners, joint adventurers, and agent/principal." *Wolf,* 107 Cal.App.4th at
3   30.
4       Similarly, Plaintiffs fail to allege, and cannot allege, that Defendants had exclusive
5   knowledge of their campaign contributions and the EquityComp® lawsuits.  Defendants'
6   contributions were not made in secret; they were public record at the time they were made and
7   were disclosed by Commissioner Lara in public filings.  Further, the San Diego Union-Tribune
8   published a national news story discussing Defendants' campaign contributions before the parties
9   entered into the Consulting Agreement.  The 2017 EquityComp® settlement between Applied and
10  the CDI was also public record, and all private lawsuits based on EquityComp® were filed on
11  public court dockets and subject to public reporting.  A simple Google search would have revealed
12  them.[4]
13      Turning to the next circumstance, Plaintiffs have failed to plead, let alone plead with
14  particularity, any "affirmative acts of concealment[,] *e.g.*, that the defendant sought to suppress
15  information in the public domain" regarding their campaign contributions and the EquityComp®
16  litigation prior to the signing of the Consulting Agreement.  *Garcia v. Gen. Motors LLC*, No. 18-
17  cv-1313, 2018 WL 6460196, at *18 (E.D. Cal. Dec. 10, 2018).  Finally, for the same reason,
18  Plaintiffs have not alleged with any particularity that Defendants' representations of good standing
19  were mere partial representations involving active suppression of other material facts in the public
20  domain.  Thus, Plaintiffs have failed to allege Defendants had a duty to disclose their campaign
21  contributions or past lawsuits in connection with the Consulting Agreement, and Count III fails as
22  a matter of law.
23      **Second**, Count VII—Plaintiffs' breach of the covenant of good faith and fair dealing
24  claim—is superfluous to Count I, Plaintiffs' breach of contract claim.  "California recognizes that
25  every contract contains an implied covenant of good faith and fair dealing, impos[ing] upon each
26
27      [4] Defendants intend to file a Rule 11 motion for sanctions due to Plaintiffs' failure to
28  conduct a cursory inquiry or even a simple internet search that would have revealed their claims were frivolous.

1  contracting party the duty to refrain from doing anything which would render performance of the
2  contract impossible by any act of his own, but also the duty to do everything that the contract
3  presupposes that he will do to accomplish its purpose." *Lyons v. Coxcom, Inc.*, 718 F. Supp. 2d
4  1232, 1239 (S.D. Cal. 2009) (citing 1 Witkin, Summary of California Law, Contracts § 798 (10th
5  ed.2005)).  However, "[a] breach of the covenant of good faith and fair dealing does not give rise
6  to a cause of action separate from a cause of action for breach of the contract containing the
7  covenant." *Smith v. Int'l Bhd. of Elec. Workers*, 109 Cal. App. 4th 1637, 1645 (2003).  In other
8  words, "[w]hen a party brings claims for breach of the implied covenant of good faith and fair
9  dealing and breach of contract, if the 'allegations do not go beyond the statement of a
10 mere contract breach and, relying on the same alleged acts, simply seek the same damages or other
11 relief already claimed in a companion contract clause of action, they may be disregarded as
12 superfluous as no additional claim is actually stated.'" *Soundgarden v. UMG Recordings, Inc.*,
13 No. 19-cv5449, 2020 WL 1815855, at *17 (C.D. Cal. Apr. 6, 2020) (quoting *Careau & Co. v. Sec.*
14 *Pac. Bus. Credit, Inc.,* 222 Cal. App. 3d 1371, 1392–95 (Ct. App. 1990), *as modified on denial of*
15 *reh'g* (Oct. 31, 2001)).
16       Plaintiffs' Count VII is exactly such a superfluous claim.  Count VII states, *inter alia*, that
17 "plaintiffs did all, or substantially all, of the significant things that the Consulting Agreement
18 required them to do," Compl. ¶ 90; that "Defendants, in breach of the Consulting Agreement,
19 failed to pay Plaintiff a $1 million fee for services rendered pursuant to the Consulting
20 Agreement," *id.* ¶ 91; and that "Defendants have no justification or defense for their breach of the
21 express terms of the Consulting Agreement," *id.*¶¶ 92 and 94.  These allegations do not
22 demonstrate "a failure or refusal to discharge contractual responsibilities, prompted not by an
23 honest mistake, bad judgment or negligence but rather by a conscious and deliberate act, which
24 unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the
25 other party thereby depriving that party of the benefits of the agreement." *Careau & Co.*, 222 Cal.
26 App. 3d at 1395 (describing circumstances giving rise to a breach of the duty of good faith and fair
27 dealing).  Rather, they outline the same alleged contractual breach Plaintiffs allege in Count One.
28 *See* Compl. ¶¶ 43-44 ("In breach of the Consulting Agreement, defendants failed to pay Plaintiffs

the $1 million fee for services rendered pursuant to the Consulting Agreement. Defendants have no justification or defense for their breach of the express terms of the Consulting Agreement"). Moreover, Plaintiffs "have not even attempted to plead a basis for a recovery of anything other than ordinary contract damages." *Careau & Co.*, 222 Cal. App. 3d at 1395. Accordingly, Count VII "is simply duplicative of their [other] contract causes of action and thus may be disregarded." *Id*.

## CONCLUSION

As explained above, Plaintiffs' Counts III and VII arise from conduct in furtherance of Defendants' right to free speech. Accordingly, Defendants respectfully request that the Court strike Counts III and VII of the Complaint pursuant to California's anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16.

Dated: January 5, 2021                                  Respectfully submitted,

/s/ Maxwell V. Pritt
**BOIES SCHILLER FLEXNER LLP**
Maxwell V. Pritt (SBN 253155)
mpritt@bsfllp.com
Antonio L. Ingram II (SBN 300528)
aingram@bsfllp.com
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Tel: (415) 293-6800
Fax: (415) 293-6899


*Attorneys for Defendants*
APPLIED UNDERWRITERS, INC, STEVEN MENZIES, and ALAN QUASHA

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 5, 2021, I electronically filed DEFENDANTS' NOTICE OF MOTION AND ANTI-SLAPP MOTION TO STRIKE COUNTS III AND VII OF THE COMPLAINT with the Clerk of Court using the CM/ECF system which sent an email notification to all participants in this case who are registered CM/ECF users.  I further caused the documents listed above to be served via email and FedEx on the following:

David J. Millstein
Owais Bari
MILLSTEIN & ASSOCIATES
100 The Embarcadero, Penthouse
San Francisco, CA 94105
dmillstein@millstein-law.com
obari@millstein-law.com

Dated: January 5, 2021					BOIES SCHILLER FLEXNER LLP

								/s/ *Ashleigh Jensen*
								Ashleigh Jensen