**BOIES SCHILLER FLEXNER LLP**
Maxwell V. Pritt (SBN 253155)
mpritt@bsfllp.com
Antonio L. Ingram II (SBN 300528)
aingram@bsfllp.com
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Tel: (415) 293-6800
Fax: (415) 293-6899

*Attorneys for Defendants*,
APPLIED UNDERWRITERS, INC.,
STEVEN MENZIES, and ALAN QUASHA

**MILLSTEIN & ASSOCIATES**
David J. Millstein (SBN 87878)
Gerald S. Richelson (SBN 267705)
Owais Bari (SBN 321954)
100 The Embarcadero, Penthouse
San Francisco, CA 94105
Telephone: (415) 348-0348
Facsimile: (415) 348-0336
dmillstein@millstein-law.com
grichelson@millstein-law.com
obari@millstein-law.com

*Attorneys for Plaintiffs*,
RUSTY AREIAS, an Individual and
MERCURY PUBLIC AFFAIRS, LLC,
a Delaware corporation transacting
business in California, assignees of
California Strategies, LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUSTY AREIAS, an Individual and MERCURY PUBLIC AFFAIRS, LLC, a Delaware corporation transacting business in California, assignees of California Strategies, LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>APPLIED UNDERWRITERS, INC, a Nebraska corporation, STEVEN MENZIES, an individual, ALAN QUASHA, an individual, and DOES 1-20, inclusive,<br><br>Defendants. | Case No. 4:21-CV-00023-JST<br><br>**JOINT CASE MANAGEMENT STATEMENT** |

**INTRODUCTION**

Plaintiffs Rusty Areias and Mercury Public Affairs LLC ("Plaintiffs") and Defendants Applied Underwriters, Inc., Steven Menzies, and Alan Quasha ("Defendants") submit this Joint Case Management Statement.

*Plaintiffs' Statement:*

RUSTY AREIAS and MERCURY PUBLIC AFFAIRS, LLC ("Plaintiffs") (public affairs consultants) brought this commercial dispute against APPLIED UNDERWRITERS, INC ("AU"), an insurance company, STEVEN MENZIES ("Menzies") the owner and president of AU, an Individual, ALAN QUASHA ("Quasha").

Defendants hired Plaintiffs to assist with regulatory issues related to the purchase of AU and its related and subsidiary companies, in order to save Defendants from the imminent forfeiture of a 60-million-dollar deposit. As a direct result of Plaintiffs' services, New Mexico approved the re-domestication of CIC to New Mexico without objection from California regulators so that AU/Quasha avoided losing a $60 million deposit and was able to purchase AU. Defendants accepted Plaintiffs' performance and affirmed their obligation to pay Plaintiffs for services rendered, but never paid.  Plaintiff asserts claims of Breach of Oral and Written Contract, Promissory Fraud, Quantum Meruit and Unjust Enrichment in its complaint.  Plaintiffs anticipate further amending the complaint depending on the Court's ruling on pending motions.

*Defendants' Statement:*

The crux of this case involves consultants (Plaintiffs) attempting to seek payment under an agreement whose compensation was contingent on a successful outcome for Defendants. Plaintiffs failed to provide this outcome, yet want payment despite their failure to achieve the contractually-required outcome.  Plaintiffs were tasked with either (1) obtaining the approval of a specific regulatory Form A filing pending before the California Department of Insurance ("CDI"), or (2) obtaining the successful redomestication of California Insurance Company ("CIC") from California to Illinois.  They failed in both of these respects.  As a result, they have alleged fictitious and unsubstantiated oral side agreements and claims of fraud to try to justify why they should receive payment despite their failure to meet the written contractual terms.  These

1 claims are baseless, and any allegations of success is belied by the fact that CIC was placed in a
2 conservatorship by the California Insurance Commissioner.  Plaintiffs' request for compensation
3 is both without merit under the plain and unambiguous terms of the parties' consulting agreement
4 and unreasonable.

5   **1.**  **JURISDICTION AND SERVICE**

6   This Court has subject-matter jurisdiction based on diversity. 28 U.S.C. § 1332.  Neither
7 party objects to venue or disputes personal jurisdiction.

8   **2.**  **FACTS**

9   **Plaintiffs assert the facts of the case as follows:**

10   Defendants hired Plaintiffs to assist with regulatory issues related to the purchase of AU
11 and its related and subsidiary companies, in order to save Defendants from the imminent forfeiture
12 of a 60-million-dollar deposit. On or about June 26, 2019, plaintiffs and defendants agreed upon
13 the material terms of their engagement. Plaintiffs agreed to provide general and strategic
14 consulting services to assist in getting the approval of California Insurance Company's ("CIC")
15 Form-A application or assist in CIC's re-domestication to the State of Illinois or any other state
16 subject to the 'parties' agreement. Defendants agreed to pay $1 million and costs as fees for
17 'plaintiffs' services'".

18   Under the Consulting Agreement, the parties could, and did, mutually agree to re-
19 domesticate CIC to a state other than Illinois (New Mexico). The Consulting Agreement is
20 ambiguous as to whether the agreement required a writing only to agree to a new date or whether
21 a writing was required to agree to re-domestication to a state other than Illinois as well.

22   By late August, it became obvious that the CDI was not going to approve CIC's FORM-
23 A application in time. AU, Menzies, and Quasha decided that under the circumstances, CIC would
24 attempt to re-domesticate to any state that it could to avoid the forfeiture of their $50,000,000
25 deposit to Berkshire Hathaway and communicated that to Plaintiffs. Defendants began to look for
26 other states to re-domesticate CIC to and fixed on New Mexico.

27   Because CIC was domesticated in California, Defendants and CIC were aware that if
28 California objected to the re-domestication, New Mexico would not allow it to occur. Defendants

1  AU, Menzies, and Quasha requested Plaintiffs direct all their efforts to obtain an agreement from
2  CDI to not object to CIC's re-domestication to another state, i.e., New Mexico.

3  As the deadline approached for forfeiture, on or about September 2019, Menzies obtained
4  a 10-day extension from Berkshire Hathaway, from September 30, 2019, to October 10, 2019, so
5  that it could pursue domestication in New Mexico. Quasha informed Plaintiffs that Menzies
6  and/or Quasha paid an additional $10 million deposit to Berkshire Hathaway over the initial $50
7  million deposit for the extension. Based on this, and to ensure that Plaintiffs continued to work
8  on the New Mexico re-domestication with great efforts, Defendants agreed to a one-month
9  extension, timed to occur after the hearing before New Mexico Office of Superintendent.

10  On or about October 2019, Defendant Quasha, growing more distressed that he would
11  lose the $60 million dollar deposit, offered the Plaintiffs as an additional incentive, to pay an
12  additional fee of $1 million if Plaintiffs could avoid the forfeiture.

13  Plaintiffs devised a comprehensive strategy to assist CIC in obtaining re-domestication to
14  New Mexico and ensure that CDI would not object thereto, meeting with CID staff for that
15  purpose.  On or about October 1, 2019, the parties agreed to extend the Consulting Agreement by
16  one month.

17  On October 9, 2019, three senior officials representing CDI attended a hearing before New
18  Mexico Office of Superintendent. At the hearing, they were asked if they object to the Berkshire
19  Merger Deal. An objection would have prevented re-domestication. As a direct result of the
20  Plaintiffs' efforts, none of the officials from CDI objected during the hearing.

21  On or about October 15, 2019, plaintiffs sent an invoice via email to Quasha for payment
22  of $2 million in consulting fees for assisting in securing re-domestication to the state of New
23  Mexico and securing 'California's non-objection.' Quasha, in response to Plaintiffs' email,
24  affirmed that AU owed the initial contract price, disputed only the second $1 million, and asked
25  the bill be re-stated, with a suggestion of future work:

26  *"Rusty,*
27  *There is a saying on Wall Street that the bears do well, and the bulls do well, but*
28  *the pigs get slaughtered…. Please send the correct bill without the "supplement". We would*

*like to work together in the future, but not if trust gets damaged."*

Notably, Quasha did not deny he promised to pay the supplement (only that it was too much money.)

Shortly after the re-domestication and merger, AU's history of misdeeds caught up with them. On November 5, 2019, the Superior Court of San Mateo appointed the California Insurance Commissioner as Conservator for California Insurance Company.

To date Defendants have not paid either the "correct" amount of $1 million dollars owed and affirmed nor the "supplement."

**Defendants assert the facts of the case as follows:**

Plaintiffs initiated this action in order to seek compensation for a failed consulting project. The relevant history is as follows: Defendant Steven Menzies is Applied Underwriters' founder and CEO. Menzies entered into an agreement with Berkshire Hathaway Inc. ("Berkshire") to purchase Berkshire's interest in CIC (the "Berkshire Transaction"). As part of this transaction, Menzies had to obtain regulatory approval from CDI to redomesticate CIC from California to another state. The Berkshire Transaction also involved the sale of Applied Underwriters ("Applied") to a purchasing group led by Defendant Alan Quasha and included a $50 million non-refundable deposit if the merger was not completed by September 30, 2019.

In California, Menzies submitted a Form A application to CDI for approval of the Berkshire Transaction. If CDI did not approve the Form A by September 30, 2019, Menzies risked losing his non-refundable deposit, and his only option would be to redomesticate CIC to another jurisdiction that approved of the transaction. Given the stakes of the Form A approval, Menzies and Applied entered into the Consulting Agreement on July 10, 2019, with consulting firm California Strategies, LLC. Under that Consulting Agreement, Plaintiffs (who represented they had a close connection with California Insurance Commissioner Ricardo Lara) were to provide consulting services to assist with securing either (1) CDI's approval of the Form A application, or (2) the redomestication of CIC to Illinois.

After submitting the Form A to the CDI, it eventually became clear that CDI would not approve it before the deadline for the Berkshire Transaction. So Menzies negotiated a one-month

extension of transaction closing at a cost of $10 million. Applied and Plaintiffs also signed a written amendment to the Consulting Agreement. The Amendment stated: "The letter of engagement between California Strategies, LLC and Applied Underwriters, Inc. dated July 8, 2019 shall be amended to provide that, effective October 1, 2019, the agreement shall be extended for a one-month period. All other terms shall remain the same." The Amendment represented the parties' joint intention to only extend the deadline by a month. Both parties intended all other terms to remain undisturbed.

As a result of CDI's failure to act on the Form A, Menzies decided to form California Insurance Company II, later renamed California Insurance Company ("CIC II"), in New Mexico, where the insurance regulators agreed to approve the Berkshire Transaction. In a hearing held on October 9, 2019, at which the CDI appeared and did not object, the New Mexico Superintendent of Insurance "conditionally approved" CIC's application to redomesticate to New Mexico via merger with CIC II. On November 4, 2019, without notice to CIC, the California Insurance Commission sought and obtained an *ex parte* order in San Mateo Superior Court (the "Conservation Order") imposing a conservatorship over CIC and place it under the Insurance Commissioner's control to prevent CIC from redomesticating to New Mexico. Plaintiffs filed suit on November 10, 2020, and have since filed an amended complaint alleging breach of contract (Counts I and III), breach of oral contract (Count II), promissory fraud (Count IV), reformation (Count V), unjust enrichment (Count VI), and common count (Count VII).

### 3. **LEGAL ISSUES**

The primary legal issues in dispute are as follows:

- Are the Plaintiffs entitled to compensation under the terms of the contract?
- Are there credible allegations of an oral modification of the contract?
- Are there credible allegations of promissory fraud?
- Did Defendants affirm their debt to Plaintiff?
- Do Defendants owe Plaintiff's under equitable theories?
- Did Defendants act with oppression, fraud, and malice?

**4.     MOTIONS**

Defendants moved to strike Counts III & IV of Plaintiffs' complaint on January 5, 2021, Dkt. 6, and to dismiss the complaint on January 11, 2021, Dkt. 15.  Plaintiffs amended their complaint on January 26, 2021, rendering moot Defendants' original motion to strike and motion to dismiss.  Dkt. 17.  On February 9, 2021, Defendants moved to dismiss the First Amended Complaint and also moved to strike Count IV of the First Amended Complaint.  Dkts. 21 & 24.  Plaintiffs opposed both motions, and sought sanctions in relation to Defendants' Motion to Strike.  Dkts. 25 & 29, and Defendants replied, Dkts. 35 & 37.  The Court held a hearing on both motions on March 25, 2021, at 2:00 p.m. PST, and the parties are awaiting the Court's ruling on the pending motions.  No other motions are currently pending.

**5.     AMENDMENT OF PLEADINGS**

Plaintiffs filed a First Amended Complaint on January 26, 2021.

**6.     EVIDENCE PRESERVATION**

The parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information and have met and conferred during the parties' Rule 26(f) conference regarding reasonable and proportionate steps to preserve evidence relevant to the issues reasonably evident in this action.  The parties agree in principle that a stipulated order as to ESI is appropriate and will file a proposed order for the Court's consideration prior to the start of discovery.

**7.     DISCLOSURES**

The parties agree that initial disclosures should be made within the time prescribed in the Federal Rules of Civil Procedure.

**8.     DISCOVERY**

    **A.     Discovery Taken to Date**

To date, no discovery has been taken as part of this litigation.

    **B.     Timing of Discovery Commencement**

The parties agree that discovery will commence 14 days after the pleadings are settled.  The parties further agree that, within 14 days of the pleadings being settled, they will meet and

confer as to a proposed discovery schedule and submit a proposed schedule for the Court's consideration and approval.

### C. Protective Order

Prior to the exchange of initial disclosures, the parties will meet and confer and then file a proposed protective order.

### D. Stipulated E-Discovery Order

The parties will file a proposed order governing discovery of ESI for the Court's consideration.

### E. Proposed Discovery Plan

Within seven days of the pleadings being settled, the parties will file a proposed order setting forth a case schedule, to include a discovery plan, for the Court's consideration and approval.

### F. Current Discovery Disputes

There are no discovery disputes at this time.

## 9. RELATED CASES

*Insurance Commissioner of the State of California v. California Insurance Company*, No. 19-CIV-06532 (San Mateo Superior Court).

## 10. RELIEF

Defendants do not believe Plaintiffs are entitled to any of the relief they seek.

Plaintiffs believe they are entitled to damages of $2,000,000, their cost to bring this suit including reasonable attorneys' fees, punitive damages, in the alternative such relief owed in equity, and all other relief allowed by law.

## 11. SETTLEMENT AND ADR

The parties have informally explored settlement but have thus far been unable to reach agreement. The parties have not engaged formal ADR processes, but Defendants are willing to do so.

## 12. CONSENT TO MAGISTRATE FOR ALL PURPOSES

Defendants consent to a Magistrate Judge presiding for all purposes, but Plaintiffs do not.

**13.   OTHER REFERENCES**

The parties do not believe this case is suitable for reference to binding arbitration or a special master.

**14.   NARROWING OF ISSUES**

The parties will consider issues that can be narrowed by agreement or by motion, as well as potential means to expedite the presentation of evidence at trial.

**15.   EXPEDITED TRIAL PROCEDURE**

The parties agree that this case is not suitable for handling under the Expedited Trial Procedure of General Order No. 64.

**16.   PROPOSED CASE SCHEDULE**

Within 14 days of the pleadings being settled, the parties will meet and confer in good faith and file a proposed order setting forth a case schedule for the Court's consideration and approval.

**17.   TRIAL**

The parties believe this case can be decided by a jury trial of three to five days.

**18.   DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

Defendants have made the required Certification of Interested Entities or Persons. *See* Dkt. 2.

**19.   PROFESSIONAL CONDUCT**

All attorneys of record have reviewed the Guidelines for Professional Conduct for the Northern District of California.

///

///

///

///

///

///

| | |
|---|---|
| Dated: August 10, 2021 | Respectfully submitted, |
| | */s/ Maxwell V. Pritt* |
| | Maxwell V. Pritt (SBN 253155) |
| | mpritt@bsfllp.com |
| | Antonio L. Ingram II (SBN 300528) |
| | aingram@bsfllp.com |
| | 44 Montgomery Street, 41st Floor |
| | San Francisco, CA 94104 |
| | Tel: (415) 293-6800 |
| | Fax: (415) 293-6899 |
| | |
| | *Attorneys for Defendants*, |
| | APPLIED UNDERWRITERS, INC, STEVEN MENZIES, and ALAN QUASHA |
| | |
| | */s/ Gerald S. Richelson* |
| | David J. Millstein (SBN 87878) |
| | Gerald S. Richelson (SBN 267705) |
| | Owais Bari (SBN 321954) |
| | MILLSTEIN & ASSOCIATES |
| | 100 The Embarcadero, Penthouse |
| | San Francisco, CA 94105 |
| | Telephone: (415) 348-0348 |
| | Facsimile: (415) 348-0336 |
| | dmillstein@millstein-law.com |
| | grichelson@millstein-law.com |
| | obari@millstein-law.com |
| | |
| | *Attorneys for Plaintiffs,* |
| | RUSTY AREIAS, an Individual and MERCURY PUBLIC AFFAIRS, LLC, a Delaware corporation transacting business in California, assignees of California Strategies, LLC |

## **ATTORNEY ATTESTATION**

Pursuant to N.D. Cal. Civil L.R. 5-1(i)(3), I, Maxwell V. Pritt, attest that concurrence in the filing of this document has been obtained from Gerald S. Richelson, the signatory shown above, and that he has authorized placement of his electronic signature on this document.

Executed on this 10th day of August, 2021, at San Francisco, California.

                                                          */s/ Maxwell V. Pritt*
                                                         MAXWELL V. PRITT