**BOIES SCHILLER FLEXNER LLP**
Maxwell V. Pritt (SBN 253155)
mpritt@bsfllp.com
Antonio L. Ingram II (SBN 300528)
aingram@bsfllp.com
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Tel: (415) 293-6800
Fax: (415) 293-6899

*Attorneys for Defendants*,
APPLIED UNDERWRITERS, INC.,
STEVEN MENZIES, and ALAN QUASHA

**MILLSTEIN & ASSOCIATES**
David J. Millstein (SBN 87878)
Gerald S. Richelson (SBN 267705)
100 The Embarcadero, Penthouse
San Francisco, CA 94105
Telephone: (415) 348-0348
Facsimile: (415) 348-0336
dmillstein@millstein-law.com
grichelson@millstein-law.com

*Attorneys for Plaintiff*,
RUSTY AREIAS, an Individual and
MERCURY PUBLIC AFFAIRS, LLC,
a Delaware corporation transacting
business in California, assignees of
California Strategies, LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUSTY AREIAS, an Individual and MERCURY PUBLIC AFFAIRS, LLC, a Delaware corporation transacting business in California, assignees of California Strategies, LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>APPLIED UNDERWRITERS, INC, a Nebraska corporation, STEVEN MENZIES, an individual, ALAN QUASHA, an individual, and DOES 1-20, inclusive,<br><br>Defendants. | Case No. 4:21-CV-00023-JST<br><br>**JOINT CASE MANAGEMENT STATEMENT** |

**INTRODUCTION**

Plaintiffs Rusty Areias and Mercury Public Affairs LLC ("Plaintiffs") and Defendants Applied Underwriters, Inc., Steven Menzies, and Alan Quasha ("Defendants") submit this Joint Case Management Statement.

*Plaintiffs' Statement:*

RUSTY AREIAS and MERCURY PUBLIC AFFAIRS, LLC ("Plaintiffs") (public affairs consultants) brought this commercial dispute against APPLIED UNDERWRITERS, INC ("AU"), an insurance company, STEVEN MENZIES ("Menzies") the owner and president of AU, an Individual, ALAN QUASHA ("Quasha").

Defendants hired Plaintiffs to assist with regulatory issues related to the purchase of AU and its related and subsidiary companies, in order to save Defendants from the imminent forfeiture of a 60-million-dollar deposit. As a direct result of Plaintiffs' services, New Mexico approved the re-domestication of CIC to New Mexico without objection from California regulators so that AU/Quasha avoided losing a $60 million deposit and was able to purchase AU. Defendants accepted Plaintiffs' performance and affirmed their obligation to pay Plaintiffs for services rendered, but never paid. Plaintiff asserts claims of Breach of Oral and Written Contract, Quantum Meruit and Unjust Enrichment in its complaint.

*Defendants' Statement:*

The crux of this case involves consultants (Plaintiffs) attempting to seek payment under an agreement whose compensation was contingent on a successful outcome for Defendants. Plaintiffs failed to provide this outcome, yet want payment despite their failure to achieve the contractually-required outcome. Plaintiffs were tasked with either (1) obtaining the approval of a specific regulatory Form A filing pending before the California Department of Insurance ("CDI"), or (2) obtaining the successful redomestication of California Insurance Company ("CIC") from California to Illinois. They failed in both of these respects. As a result, they have alleged a fictitious and unsubstantiated oral agreement to try to justify why they should receive payment despite their failure to meet the written contractual terms. These claims are baseless,

and any allegations of success is belied by the fact that CIC was placed in a conservatorship by the CDI before CIC could re-domesticate to another state. Plaintiffs' request for compensation is both unreasonable and without merit under the plain and unambiguous terms of the parties' consulting agreement.

## 1.   JURISDICTION AND SERVICE

This Court has subject-matter jurisdiction based on diversity. 28 U.S.C. § 1332. Neither party objects to venue or disputes personal jurisdiction.

## 2.   FACTS

**Plaintiffs assert the facts of the case as follows:**

Defendants hired Plaintiffs to assist with regulatory issues related to the purchase of AU and its related and subsidiary companies, in order to save Defendants from the imminent forfeiture of a 60-million-dollar deposit. On or about June 26, 2019, plaintiffs and defendants agreed upon the material terms of their engagement. Plaintiffs agreed to provide general and strategic consulting services to assist in getting the approval of California Insurance Company's ("CIC") Form-A application or assist in CIC's re-domestication to the State of Illinois or any other state subject to the 'parties' agreement. Defendants agreed to pay $1 million and costs as fees for 'plaintiffs' services"".

Under the Consulting Agreement, the parties could, and did, mutually agree to re-domesticate CIC to a state other than Illinois (New Mexico). The Consulting Agreement is ambiguous as to whether the agreement required a writing only to agree to a new date or whether a writing was required to agree to re-domestication to a state other than Illinois as well.

By late August, it became obvious that the CDI was not going to approve CIC's FORM-A application in time. AU, Menzies, and Quasha decided that under the circumstances, CIC would attempt to re-domesticate to any state that it could to avoid the forfeiture of their $50,000,000 deposit to Berkshire Hathaway and communicated that to Plaintiffs. Defendants began to look for other states to re-domesticate CIC to and fixed on New Mexico.

Because CIC was domesticated in California, Defendants and CIC were aware that if California objected to the re-domestication, New Mexico would not allow it to occur. Defendants AU, Menzies, and Quasha requested Plaintiffs direct all their efforts to obtain an agreement from CDI to not object to CIC's re-domestication to another state, i.e., New Mexico.

As the deadline approached for forfeiture, on or about September 2019, Menzies obtained a 10-day extension from Berkshire Hathaway, from September 30, 2019, to October 10, 2019, so that it could pursue domestication in New Mexico. Quasha informed Plaintiffs that that Menzies and/or Quasha paid an additional $10 million deposit to Berkshire Hathaway over the initial $50 million deposit for the extension. Based on this, and to ensure that Plaintiffs continued to work on the New Mexico re-domestication with great efforts, Defendants agreed to a one-month extension, timed to occur after the hearing before New Mexico Office of Superintendent.

On or about in October 2019, Defendant Quasha, growing more distressed that he would lose the $60 million dollar deposit, offered the Plaintiffs as an additional incentive, to pay an additional fee of $1 million if Plaintiffs could avoid the forfeiture.

Plaintiffs devised a comprehensive strategy to assist CIC in obtaining re-domestication to New Mexico and ensure that CDI would not object thereto, meeting with CID staff for that purpose. On or about October 1, 2019, the parties agreed to extend the Consulting Agreement by one month.

On October 9, 2019, three senior officials representing CDI attended a hearing before New Mexico Office of Superintendent. At the hearing, they were asked if they object to the Berkshire Merger Deal. An objection would have prevented re-domestication. As a direct result of the plaintiffs' efforts, none of the officials from CDI objected during the hearing.

On or about October 15, 2019, plaintiffs sent an invoice via email to Quasha for payment of $2 million in consulting fees for assisting in securing re-domestication to the state of New Mexico and securing 'California's non-objection. Quasha, in response to 'Plaintiffs'

email, affirmed that AU owed the initial contract price, disputed only the second $1 million, and asked the bill be re-stated, with a suggestion of future work:

> "Rusty,
>
> *There is a saying on Wall Street that the bears do well, and the bulls do well, but the pigs get slaughtered.... Please send the correct bill without the "supplement". We would like to work together in the future, but not if trust gets damaged."*

Notably, Quasha did not deny he promised to pay the supplement (only that it was too much money.)

Shortly after the re-domestication and merger, 'AU's history of misdeeds caught up with them. On November 5, 2019, the Superior Court of San Mateo appointed the California Insurance Commissioner as Conservator for California Insurance Company.

To date Defendants have not paid either the "correct" amount of $1 million dollars owed and affirmed nor the "supplement".

**Defendants assert the facts of the case as follows:**

Plaintiffs initiated this action in order to seek compensation for a failed consulting project. The relevant history is as follows: Defendant Steven Menzies is Applied Underwriters's founder and CEO. Menzies entered into an agreement with Berkshire Hathaway Inc. ("Berkshire") to purchase AU Holding Company, Inc., which included Berkshire's interest in CIC (the "Berkshire Transaction"). As part of the Berkshire transaction, Menzies had to obtain regulatory approval from CDI. The Berkshire Transaction also involved the sale of Applied Underwriters ("Applied") to a purchasing group led by Defendant Alan Quasha and included a $50 million. In California, Menzies submitted a Form A application to CDI for approval of the Berkshire Transaction. If CDI did not approve the Form A by September 30, 2019, Menzies risked losing his non-refundable deposit, and his only option would be to redomesticate CIC to another jurisdiction that approved of the transaction. Given the stakes of the Form A approval, Menzies and Applied entered into the Consulting Agreement on July 10,

2019, with consulting firm California Strategies, LLC. Under that Consulting Agreement, Plaintiffs (who represented they had a close connection with California Insurance Commissioner Ricardo Lara) were to provide consulting services to assist with securing either (1) CDI's approval of the Form A application, or (2) the redomestication of CIC to Illinois. After submitting the Form A to the CDI, it eventually became clear that CDI would not approve it before the deadline for the Berkshire Transaction. So Menzies negotiated a one-month extension of transaction closing at a cost of $10 million. Applied and Plaintiffs also signed a written amendment to the Consulting Agreement. The Amendment stated: "The letter of engagement between California Strategies, LLC and Applied Underwriters, Inc. dated July 8, 2019 shall be amended to provide that, effective October 1, 2019, the agreement shall be extended for a one-month period. All other terms shall remain the same." The Amendment represented the parties' joint intention to only extend the deadline by a month. Both parties intended all other terms to remain undisturbed.

As a result of CDI's failure to act on the Form A, Menzies decided to form California Insurance Company II, later renamed California Insurance Company ("CIC II"), in New Mexico, where New Mexico insurance regulators agreed to approve the Berkshire Transaction after a formal hearing. In a hearing held on October 9, 2019, at which CDI representatives appeared and did not object, the New Mexico Superintendent of Insurance "conditionally approved" CIC's application to redomesticate to New Mexico via merger with CIC II, and on October 10, 2019, the Berkshire Transaction closed. CDI then informed CIC that it did object to CIC's redomestication to New Mexico, and on November 4, 2019, without notice to CIC, the California Insurance Commissioner sought and obtained an *ex parte* order in San Mateo Superior Court (the "Conservation Order") imposing a conservatorship over CIC and placing it under the Insurance Commissioner's control to prevent CIC from redomesticating to New Mexico.

### 3. LEGAL ISSUES

The primary legal issues in dispute are as follows:

- Are the Plaintiffs entitled to compensation under the terms of the contract?
- Are there credible allegations of an oral modification of the contract?
- Are there credible allegations of promissory fraud?
- Did Defendants affirm their debt to Plaintiff?
- Do Defendants owe Plaintiff's under equitable theories?
- Did Defendants act with oppression, fraud, and malice?

### 4. **MOTIONS**

Defendants moved to strike Counts III & IV of Plaintiffs' complaint on January 5, 2021, Dkt. 6, and to dismiss the complaint on January 11, 2021, Dkt. 15. Plaintiffs amended their complaint on January 26, 2021, rendering moot Defendants' original motion to strike and motion to dismiss. Dkt. 17. On February 9, 2021, Defendants moved to dismiss the First Amended Complaint and also moved to strike Count IV of the First Amended Complaint. Dkts. 21 & 24. Plaintiffs opposed both motions, and sought sanctions in relation to Defendants' anti-SLAPP Motion to Strike. Dkts. 25 & 29, and Defendants replied, Dkts. 35 & 37. The Court held a hearing on both motions on March 25, 2021, at 2:00 p.m. PST, the court granted in part and denied in part Defendants' motion to dismiss and denied Defendants' anti-SLAPP motion to strike on October 19, 2021. Dkt. 63. Thereafter, Plaintiffs filed their Second Amended Complaint on November 9, 2021. Dkt. 67. Defendants filed their answer to the Second Amended Complaint on November 23, 2021. Dkt. 68.

*Defendants' anticipated motions*:

Defendants intend to move for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). Defendants may also move for an award of attorneys' fees and costs in connection with their initial anti-SLAPP motion that led Plaintiffs to withdraw their fraud claim and amend their complaint. Further, Defendants are considering moving for sanctions under Federal Rule of Civil Procedure 11 on grounds that Plaintiffs have affirmatively mislead the Court and/or omitted critical information. *See, e.g.*, *In re California Bail Bond Antitrust Litig.*, 511 F. Supp. 3d 1031, 1052 (N.D. Cal. 2021) (Tigar, J.) ("Rule 11 sanctions may be appropriate

not just where a party affirmatively misleads the Court, but where she omits critical information." (quotation marks and alteration omitted)).  For example, Plaintiffs affirmatively misled the Court by alleging (falsely) that they "prevent[ed] an objection to New Mexico domestication" of CIC by "California regulators," *e.g.*, Dkt. 67 ¶¶ 43, 53, 64, when in fact CDI now takes the position that it objected to the redomestication notwithstanding its representatives did not object at the Form A hearing in New Mexico. CIC then placed CIC in conservation to prevent such redomestication.  Plaintiffs also omitted critical information by selectively quoting an email from Defendant Quasha.  *See id.* at ¶¶ 33, 41, 62.  The omitted information makes clear that, contrary to Plaintiffs' allegation, Defendant Quasha in fact *did* dispute "that [Defendant AUI] owed Plaintiffs under the [parties'] contract." *Id.*, ¶ 62.  The email states, in full:

> Rusty,
>
> There is a saying on Wall Street that the bears do well, and the bulls do well, but the pigs get slaughtered. ***Your email came as a surprise to me, as the bill does not reflect our conversation. The Commissioner did not intervene and approve the deal. Quite the contrary, and, as you are well aware, CIC has been left with an existential crisis on its hands. Sending that bill was very cheeky of you, and unlike you. It is the first time I have received an unconstructive piece of communication from you.*** Please send the correct bill without the "supplement". We would like to work together in the future, but not if trust gets damaged.
>
> Alan

Defts' Ex. A (emphasized part omitted by Plaintiffs).  *Compare, e.g.*, Dkt. 25 (Plfts' Opp.) at 6 ("This email suggests that Quasha did not think that Plaintiff[s] failed to meet any purported condition precedent or failed to perform their services in substantial part.  It is admitted that [P]laintiffs' services in securing non-objection from CDI during CIC's re-domestication to New Mexico were to Defendants' satisfaction."); *id.* at 2 ("Defendants accepted Plaintiffs' performance and ratified their obligation to pay the Plaintiffs' for their services rendered but never paid."); *id.* at 9 ("As identified above and in paragraph 33 of the FAC, Quasha ratified that he was satisfied with plaintiffs' services in securing non-objection from CDI during CIC's re-domestication to New Mexico."); *id.* at 11 ("Quasha made an offer to the Plaintiffs' to double

their fee to $ 2 million if they could help him avoid the forfeiture of $60 million."). Moreover, Plaintiffs omit that they did in fact revise and reduce their invoice to $1 million. *See* Defts' Ex. B.

*Plaintiffs' response to Defendants' anticipated motions.*

Defendants anticipated motions are frivolous. Their assertion that Plaintiffs mislead the court is clearly made in bad faith as the quotation identified by Defendants clearly identifies that there is missing language by use of an ellipses. Additionally, that Defendants assert the court was misled because California regulators now claim they objected at the hearing in front of the New Mexico Office of the Superintendent of Insurance is belied by the fact that the Order Approving Merger stated that the California Department of Insurance attended the hearing telephonically and raised no objections to the proposed merger, which Defendants themselves sought judicial notice of in support of their motion to dismiss, see Dkt 22-5. Finally, the fact that Plaintiffs sought to obtain payment of the at the time uncontested $1,000,000 is no admission that it is the only amount owed, prior to the relationship falling apart. Notably, Defendants didn't even pay the $1 million they affirmed in the email.

5. **AMENDMENT OF PLEADINGS**

Plaintiffs filed a First Amended Complaint on January 26, 2021 and a Second Amended Complaint on November 9, 2021.

6. **EVIDENCE PRESERVATION**

The parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information and have met and conferred during the parties' Rule 26(f) conference regarding reasonable and proportionate steps to preserve evidence relevant to the issues reasonably evident in this action. The parties agree in principle that a stipulated order as to ESI is appropriate and will file a proposed order for the Court's consideration prior to the start of discovery.

7. **DISCLOSURES**

The parties agree that initial disclosures should be made within the time prescribed in the Federal Rules of Civil Procedure.

**8.    DISCOVERY**

**A.    Discovery Taken to Date**

To date, no discovery has been taken as part of this litigation.

**B.    Timing of Discovery Commencement**

The parties agree that discovery will commence 21 days after the pleadings are settled. The parties further agree that, within 21 days of the pleadings being settled, they will meet and confer as to a proposed discovery schedule and submit a proposed schedule for the Court's consideration and approval.

**C.    Protective Order**

Prior to the exchange of initial disclosures, the parties will meet and confer and then file a proposed protective order.

**D.    Stipulated E-Discovery Order**

The parties will file a proposed order governing discovery of ESI for the Court's consideration.

**E.    Proposed Discovery Plan**

Within 21 days of the pleadings being settled, the parties will file a proposed order setting forth a case schedule, to include a discovery plan, for the Court's consideration and approval.

**F.    Current Discovery Disputes**

There are no discovery disputes at this time.

**9.    RELATED CASES**

*Insurance Commissioner of the State of California v. California Insurance Company*, No. 19-CIV-06532 (San Mateo Superior Court).

**10.    RELIEF**

Defendants do not believe Plaintiffs are entitled to any of the relief they seek.

Plaintiffs believe they are entitled to damages of $2,000,000, their cost of bring this suit including reasonable attorneys' fees, punitive damages, in the alternative such relief owed in equity, and all other relief allowed by law.

**11.    SETTLEMENT AND ADR**

The parties have informally explored settlement but have thus far been unable to reach agreement.   The parties have not engaged formal ADR processes, but Defendants are willing to do so.

**12.    CONSENT TO MAGISTRATE FOR ALL PURPOSES**

Defendants consent to a Magistrate Judge presiding for all purposes, but Plaintiffs do not.

**13.    OTHER REFERENCES**

The parties do not believe this case is suitable for reference to binding arbitration or a special master.

**14.    NARROWING OF ISSUES**

The parties will consider issues that can be narrowed by agreement or by motion, as well as potential means to expedite the presentation of evidence at trial.

**15.    EXPEDITED TRIAL PROCEDURE**

The parties agree that this case is not suitable for handling under the Expedited Trial Procedure of General Order No. 64.

**16.    PROPOSED CASE SCHEDULE**

Within 21 days of the pleadings being settled, the parties will meet and confer in good faith and file a proposed order setting forth a case schedule for the Court's consideration and approval.

**17.    TRIAL**

The parties believe this case can be decided by a jury trial of three to five days.

**18.    DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

Defendants have made the required Certification of Interested Entities or Persons. *See* Dkt. 2.

**19.     PROFESSIONAL CONDUCT**

All attorneys of record have reviewed the Guidelines for Professional Conduct for the Northern District of California.

Dated: November 30, 2021                    Respectfully submitted,

*/s/ Maxwell V. Pritt*
Maxwell V. Pritt (SBN 253155)
mpritt@bsfllp.com
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Tel: (415) 293-6800
Fax: (415) 293-6899

*Attorneys for Defendants*,

APPLIED UNDERWRITERS, INC, STEVEN MENZIES, and ALAN QUASHA


*/s/ Gerald S. Richelson*
David J. Millstein (SBN 87878)
Gerald S. Richelson (SBN 267705)
MILLSTEIN & ASSOCIATES
100 The Embarcadero, Penthouse
San Francisco, CA 94105
Telephone: (415) 348-0348
Facsimile: (415) 348-0336
dmillstein@millstein-law.com
grichelson@millstein-law.com

*Attorneys for Plaintiff,*
RUSTY AREIAS, an Individual and
MERCURY PUBLIC AFFAIRS, LLC,
a Delaware corporation transacting
business in California, assignees of
California Strategies, LLC

**ATTORNEY ATTESTATION**

Pursuant to N.D. Cal. Civil L.R. 5-1(i)(3), I, Gerald S. Richelson, attest that concurrence in the filing of this document has been obtained from Maxwell Pritt, counsel for Defendants and the signatory shown above, and that he has authorized placement of his electronic signature on this document.

Executed on this 30th day of November, 2021, at San Francisco, California.

           ___/s/ Gerald S. Richelson_____
           GERALD S. RICHELSON

# Exhibit A

| | |
|---|---|
| **From:** | Alan Quasha <aquasha@quadrantmgt.com> |
| **Sent:** | Tuesday, October 15, 2019 12:49 PM |
| **To:** | Rusty Areias |
| **Cc:** | Silver |
| **Subject:** | Re: Applied Underwriters Invoice # 101960 |

Rusty,

There is a saying on Wall Street that the bears do well, and the bulls do well, but the pigs get slaughtered. Your email came as a surprise to me, as the bill does not reflect our conversation. The Commissioner did not intervene and approve the deal. Quite the contrary, and, as you are well aware, CIC has been left with an existential crisis on its hands. Sending that bill was very cheeky of you, and unlike you. It is the first time I have received an unconstructive piece of communication from you. Please send the correct bill without the "supplement". We would like to work together in the future, but not if trust gets damaged.

Alan

Sent from my iPhone

> On Oct 14, 2019, at 5:11 PM, Rusty Areias <rareias@calstrat.com> wrote:
>
> Alan,
>   Find attached the invoice reflecting our contractual obligations as well as the supplement you kindly offered during our strategy discussion last week. For all the difficulty We are glad you were able to get "the deal" with Berkshire closed. Fabian and I look forward to working with you to return the relationship with the Department of Insurance to a more constructive one. Feel free to call me or Fabian with any questions.
>                                                                                                                                                                               All the Best,
>
>                                                                                                                                                                               Rusty and Fabian
>
>
>
>> On 10/14/19, 10:51 AM, "Gina Robertson" <gina@redwitz.com> wrote:
>>
>>
>> Rusty please review and let me know if you want any changes to the description....
>>
>>
>> Gina Robertson, CPA
>> CFO Services Manager
>> gina@redwitz.com
>> Office: (800) 576-1514
>> Fax:   (949) 753-1535
>> https://url.emailprotection.link/?bZ5uuQypPCiCXmGDL-zRIZXsPRfcnZGPLjswB0LPsyJ8Ztjzr_KuTU3s2z7aytoaqOTMdQ9RpVxmS9NBBIKHzrxoE0FCFyRzxVeDUSkFSCEMX1LINWilIJSa1a2IrCPOW-OAYlrst0ok2n6YNwWe8ZzZEff-aBw6OUSM3LKGbE8FUp7VbcTQT1Eo_7VkBsRiULErJR1prIRb72mwYYo8mbZO9n2K-RZLlE8eQuXQwBD8e2dEvCJP9HqCnbbt-NzcNMjID_UBnVRpF7of-La8fYJE81HykQlyW0tK4VEynX_k~
>>

\>\>
\>\>
\>\> Follow us on Linkedin
\>\>
\>\>
\>\> This e-mail is intended solely for the person to whom it is addressed and may contain confidential and or privileged information.  Any review, dissemination, copying, printing or other use of this e-mail by persons or entities other than the addressee is prohibited.  If you have received this e-mail in error, please contact the sender immediately and delete the material from any computer
\>\>
\>\>
\>\>
\>\>
\>\>
\>\> To view the attachment, you must have the Adobe® Reader® software installed on your computer. To get a free version of this software from Adobe, click here:
https://url.emailprotection.link/?b02XLT9FkeoGov1HJ29HobS1mr8sc0kbXIB8IW4oAC4l2XCPmc5-Zozw1hO8OacQboE9Q9aJDBmkRI92osirO2-pw_b5ZAiUT1EVOFBdbccDsH7qWY2Q4hJfA5-6_qLie
\> &lt;Invoice # 101960.PDF&gt;

# Exhibit B

| | |
|---|---|
| **From:** | Rusty Areias <rareias@calstrat.com> |
| **Sent:** | Tuesday, October 15, 2019 5:34 PM |
| **To:** | Alan Quasha |
| **Cc:** | f.nunez@mac.com; Tony Coelho |
| **Subject:** | Fwd: Invoice # 101960 |
| **Attachments:** | Invoice # 101960.PDF; ATT00001.htm |

Sent from my iPhone

Begin forwarded message:

> **From:** Gina Robertson <gina@redwitz.com>
> **Date:** October 15, 2019 at 2:31:56 PM PDT
> **To:** Rusty Areias <rareias@calstrat.com>
> **Subject: Invoice # 101960**
>
> Here you - updated
>
>
> Gina Robertson, CPA
> CFO Services Manager
> gina@redwitz.com
> Office: (800) 576-1514
> Fax: (949) 753-1535
> https://linkprotect.cudasvc.com/url?a=https%3a%2f%2fwww.redwitz.com&c=E,1,6KbvN2nFuW2IV3AI9CE1ZmX-FokmoFa5Q8Ml2aqUGKDbTeuAyDnw02PIdjG5-QHzvia9j8HpqZOrliTKhyGZreS4HqXfu0_g7y6IGjvgMzHpqLyg&typo=1
>
>
> Follow us on Linkedin
>
>
> This e-mail is intended solely for the person to whom it is addressed and may contain confidential and or privileged information. Any review, dissemination, copying, printing or other use of this e-mail by persons or entities other than the addressee is prohibited. If you have received this e-mail in error, please contact the sender immediately and delete the material from any computer
>
>
>
> To view the attachment, you must have the Adobe® Reader® software installed on your computer. To get a free version of this software from Adobe, click here:
> http://www.adobe.com/support/downloads/main.html

California Strategies, LLC
980 Ninth Street, Suite 2000
Sacramento, CA  95814



## CALIFORNIA STRATEGIES, LLC

| **Billed To:** | **Invoice Number:** |
|---|---:|
| APPLIED UNDERWRITERS, INC.<br>JEFFREY A. SILVER<br>10805 OLD MILL RD.<br>OMAHA, NE  68154 | 101960 |
| | **Invoice Date:** |
| | 10/14/19 |

| Description | Amount |
|---|---:|
| Success fee per July 8, 2019 agreement | 1,000,000.00 |
| **TOTAL CURRENT INVOICE** | **1,000,000.00** |

Please make your payment payable to:          **PAYMENT IS DUE UPON RECEIPT**

California Strategies, LLC

**Remittance Address:**

California Strategies, LLC
980 Ninth Street, Suite 2000
Sacramento, CA  95814

Phone:  (916) 266-4575          Fax:  (916) 266-4580

**Federal ID Number    33-0972251**

# CERTIFICATE OF SERVICE

I, Chrystal Pham, am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is Millstein & Associates, 100 The Embarcadero, Penthouse, San Francisco, CA 94105. On the date set forth below, I served the document(s) entitled:

- **JOINT CASE MANAGEMENT CONFERENCE STATEMENT**

on the following attorney(s) of record and/or parties in said cause as follows:

| Attorney for Defendants: | |
|---|---|
| BOIES SCHILLER FLEXNER LLP<br>Maxwell V. Pritt (SBN 253155)<br>mpritt@bsfllp.com<br>44 Montgomery Street, 41st Floor<br>San Francisco, CA 94104<br>Tel: (415) 293-6800<br>Fax: (415) 293-6899 | |

**[X]** **VIA ELECTRONIC MAIL**: By personally sending such documents via electronic email to each recipient at the email address listed.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed at San Francisco, California on **November 30, 2021.**

_____/s/ Chrystal Pham_____
Chrystal Pham

CERTIFICATE OF SERVICE - 1